STATE of Missouri,
Plaintiff-Respondent,

v.

Benjamin MORRIS,
Defendant-Appellant.

No. 46356.

Missouri Court of Appeals,
Eastern District,
Division One.

March 6, 1984.

Motion For Rehearing and/or Transfer to
Supreme Court Denied
April 4, 1984.

Application to Transfer Denied
May 15, 1984.

Peter Stragand, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

This is an appeal from a jury verdict and judgment convicting appellant of manslaughter. § 565.005 RSMo.1978.[1] The court sentenced appellant as a prior offender to eight years in the Department of Corrections. § 558.016.2 RSMo.Supp. 1983; § 565.031 RSMo.1978. The judgment is affirmed.

Appellant contends the trial court erred in: (1) denying appellant's motion to dismiss because appellant was denied a speedy trial; (2) restricting appellant's cross-examination of the state's witnesses concerning the cause of death of the victim; (3) improperly instructing the jury on the element of the cause of death; (4) refusing to allow the jury to consider as a lesser included offense the crime of assault in the third degree; and (5) refusing to instruct the jury on both excusable homicide and justifiable homicide.

The sufficiency of the evidence is not disputed; therefore, only a brief recitation of the facts is necessary. During the early afternoon of February 28, 1979, appellant and the victim engaged each other in a weaponless fight. After knocking the victim down, and even though the victim offered no resistance, appellant kicked the the victim in the sides and stomped him in the face and chest, according to one witness, and kicked him in the head and ribs twice each, according to another. The victim was found by the police, lying unconscious on the ground. The victim was hospitalized, never regained consciousness, and died from the head injuries on December 3, 1979. Appellant was arrested and charged with assault immediately after the altercation but no warrant was issued and appellant was released from custody.

Appellant first contends he was denied his constitutional right to a speedy trial. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..." U.S. Const.Amend. VI.

A grand jury indicted appellant for second degree murder in January of 1980.

---

1. All statutory references are to RSMo.1978 unless cited otherwise.

Appellant was not arrested on the murder charge until August 31, 1981, because appellant had moved to Waukegan, Illinois and law enforcement officials could not locate him until then. Appellant was arraigned on September 8, 1981 in St. Louis after waiving extradition. The trial commenced on May 10, 1982.

The first question to be resolved is the time when the right to a speedy trial attaches. "The rule now is that the time for purposes of speedy trial under the Sixth Amendment begins to run from the time of the indictment or information or an arrest, whichever occurs first." *State v. Holmes*, 643 S.W.2d 282, 285[3] (Mo.App.1982). Here, the suppressed indictment, which was the first of the three events, occurred in January, 1980. In order to give appellant the benefit of the earliest possible date when his Sixth Amendment right to a speedy trial might have arisen, this court assumes, without deciding, that the return of the suppressed indictment started the time to be considered for the purpose of appellant's right to a speedy trial.

■ Although appellant would have his right to a speedy trial attach when he was first arrested for assault, the assault charge was dropped and he was released. The assault arrest is not considered for purposes of the speedy trial issue.

The next question is what is the length of the delay in bringing appellant to trial. Respondent argues that the length of the delay for constitutional purposes ended with appellant's arraignment because § 545.780 provides a remedy for delays occasioned after arraignment. This argument, although ingenious, is wholly untenable because it confuses constitutional and statutory guidelines for resolution of speedy trial issues.

■ The Sixth Amendment gives an accused the right to a "speedy trial," not merely to a speedy arraignment. To hold that § 545.780 removes the period between arraignment and trial from the period of delay for Sixth Amendment purposes would be tantamount to saying that the statute can be used to manipulate a constitutional right, which is an unacceptable proposition. Thus, the period considered in determining the length of delay is between the earliest of arrest, indictment or information, and trial. *See United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 463[8, 9], 30 L.Ed.2d 468 (1971). Here between January, 1980 and May 10, 1982.

The next issue is whether the twenty-eight month delay between the time of the indictment and the time of trial resulted in a denial of appellant's Sixth Amendment right to a speedy trial.

■ The determination of speedy trial questions is not resolved by resort to hard and fast rules, but rather, the determination is made by a delicate balancing process:

> We, therefore, reject both of the inflexible approaches—the fixed—time period because it goes further than the Constitution requires; the demand-waiver rule because it is insensitive to a right which he [sic, we] have deemed fundamental. The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.
>
> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 2191–2192, 33 L.Ed.2d 101 (1972).

Thus, in order to determine whether appellant has been deprived of his right to a speedy trial, this court turns its attention to consideration of the four *Barker* factors. The first factor is the length of the delay:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presump-

tively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

*Barker v. Wingo,* 92 S.Ct. at 2192[18].

■ Consideration of the length of the delay becomes an inquiry into whether a twenty-eight month delay between the indictment and the trial of a defendant charged with second-degree murder arising out of a beating death suffices to trigger a further inquiry into the reasons for the delay. In other words, was the twenty-eight month delay in the case under review presumptively prejudicial?

In *State v. Buckles,* 636 S.W.2d 914, 919–920 (Mo. banc 1982), the court analyzed all four *Barker* factors to determine whether a defendant charged with second-degree murder had been denied a speedy trial where the total delay was fifteen months. By analyzing all four factors, the court implied that the delay, of which only six months was attributable to the state, was presumptively prejudicial. *State v. Bolin,* 643 S.W.2d 806, 813–814[12] (Mo. banc 1983).

■ If a fifteen-month delay in a murder trial is sufficient to trigger a further inquiry into a speedy trial issue, then twenty-eight months is likewise presumptively prejudicial. *cf. State v. Tarvis,* 465 A.2d 164, 175[18, 19] (R.I.1983) (12 months may not be presumptively prejudicial); *State v. McCoy,* 303 N.C. 1, 277 S.E.2d 515, 525[9] (1981) (11 months not presumptively prejudicial). Because the delay in bringing appellant to trial is presumptively prejudicial, the other factors must be considered.

■ The second factor is the reason for the delay. The delay between the indictment and the arrest is explained by the fact that the police were unable to locate appellant, who had moved to Waukegan, Illinois, before the indictment. A review of the legal file reveals that the delay from arraignment to trial was in large part due to four continuances requested by appellant which totalled about four months. The delays which cannot be attributed either to the inability of the state to locate appellant or to appellant's continuances totalled only five months and cannot by themselves amount to a deprivation of the right to a speedy trial of an accused murderer. No part of the delay can be attributed to a deliberate attempt by the state to delay the trial or to negligence of the state in failing to commence the trial; therefore, the reasons for the delay weigh in favor of the state. *See Barker v. Wingo,* 92 S.Ct. at 2192[19–21].

■ Next, this court must consider whether appellant asserted his right to a speedy trial. Appellant did not assert his right to a speedy trial until March 1, 1982, when he filed a pro se motion to dismiss based on his constitutional right to a speedy trial and § 545.780, the speedy trial statute. Appellant had filed four requests for continuances before he filed his motion to dismiss and a fifth motion for a continuance on April 15, 1982, a month and a half after he filed his motion to dismiss. "... [F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo,* 92 S.Ct. at 2193[22]. Likewise, an inordinate delay in asserting the right should weigh against a defendant. Appellant's assertion of his right came after he, himself, had repeatedly delayed the trial.

The fourth factor is prejudice to appellant. "A threefold policy underlies the constitutionally guaranteed right of a speedy trial—(1) prevention of undue and oppressive incarceration prior to trial, (2) minimization of the anxiety and concern accompanying public accusation, and (3) limitation of the possibility of impairing an accused's ability to defend himself." *State v. Haddix,* 566 S.W.2d 266, 274[7–10] (Mo. App.1978).

■ The delay in the present case did not cause appellant oppressive and undue incarceration because appellant was not arrested until eight months and ten days

before the trial. Moreover, this court infers that appellant suffered from no great anxiety due to the trial from the facts that no argument has been made to the effect that the state's charges generated any great publicity and that appellant had already suffered through one prior conviction.

■■■■ Finally, the trial court specifically found, and appellant does not contend otherwise, that appellant suffered no lost witnesses due to the twenty-eight month delay. No prejudice occurred here. There was no violation of appellant's constitutional right to a speedy trial.

Appellant's second contention is that the trial court erred in restricting appellant's cross-examination of the state's witnesses concerning the cause of death of the victim. The trial court refused to permit appellant to ask the state's medical experts whether the victim's death could have been caused by stabbing, shooting, drugs or alcoholism.

Similarly, the trial court prevented appellant from asking the victim's father if he was aware of any physical disabilities his son had as a result of drug addiction, stab wounds, or gunshot wounds.

■■■■ The trial court has wide discretion as to the extent of cross-examination. *See State v. Lue*, 598 S.W.2d 133, 138[8, 9] (Mo. banc 1980); *State v. Patterson*, 598 S.W.2d 483, 489[12, 13] (Mo.App.1980). In addition, the trial court has considerable discretion in determining the relevancy of evidence. *State v. Holmes*, 609 S.W.2d 132, 136 (Mo. banc 1980); *State v. Wickizer*, 583 S.W.2d 519, 524[9–11] (Mo. banc 1979).

**2.** INSTRUCTION NO. 7 READ:
   If you do not find the defendant guilty of murder in the second degree, then you must consider whether he is guilty of manslaughter.
   If you find and believe from the evidence beyond a reasonable doubt that on February 28, 1979, in the City of St. Louis, State of Missouri, the defendant caused the death of Nolan Ligon by striking him, and that the death was not a justifiable homicide as submitted in Instruction No. 8.
   Then you will find the defendant guilty of manslaughter.

■■■■ In the case under review, the trial court allowed appellant to voir dire the physicians who treated the victim. All were insistent that death resulted solely from the head injuries and not from any of the victim's other conditions, such as drug addiction. Given this testimony, the trial court found that appellant's proposed cross-examination about possible causes of death would not be relevant to any material issue and would simply parade the victim's character before the jury in an improper manner. The turbulent disposition of the victim is irrelevant absent a proper foundation, which defendant failed to lay. *See State v. Baker*, 626 S.W.2d 680 (Mo.App. 1981). The prejudicial or inflammatory value of evidence should be an important consideration in determining the relevancy of evidence.

■■■■ Likewise, the trial court was within its discretion to prevent appellant from asking the victim's father about the victim's physical disabilities. There was no foundation laid as to the connection between the physical disabilities and the death of the victim. Moreover, it was never shown that the father was qualified to testify about the cause of death. Appellant's second point is denied.

Appellant next complains of the jury instruction on manslaughter.[2] He claims the instruction is erroneous because: (1) the phrase "the defendant caused the death of [Nolan Ligon] by striking him" should have been replaced by "the defendant struck [Nolan Ligon] causing head injuries which resulted in his death on December 3, 1979," and (2) the court should have given the jury a separate instruction on cause of death.[3]

   However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then you must find the defendant not guilty of that offense.

**3.** APPELLANT'S INSTRUCTION NO. A READ:
   One of the issues in this case is whether the death of Nolan Ligon was caused by the acts of the defendant. On that issue you are instructed as follows:
   1. The state has the burden of proving beyond a reasonable doubt that the death of Nolan Ligon on December 3, 1979, was caused by the

■ Appellant maintains in the first argument that the instruction given does not comply with the Supplemental Notes on Use to MAI 15.00 series, Note 6, but he does not explain how the manslaughter verdict director departs from the proper form of the instruction. It appears, however, that appellant is relying on the following paragraph from the supplemental note on use:

Where the act of defendant or another for whose conduct defendant is responsible did not immediately cause death, the MAI–CR homicide forms may be modified to fit the circumstances of the particular case. For example, it might be submitted that "the defendant stabbed [*name of victim*] causing injuries which became infected and resulted in his death," or "the defendant shot [*name of victim*] causing injuries from which a blood clot later broke loose and resulted in his death."

MAI–CR 2d 15.00, Supplemental Notes on Use, Note 6.

The beating administered by appellant did not immediately cause the victim's death. Accordingly, the above paragraph from Supplemental Note 6 is applicable here. The applicability of Note 6 does not, however, render the manslaughter verdict director erroneous. The supplemental note states that the alternative forms for submitting the cause of death *may*, not shall, be used in homicide cases. The use of the word "may" indicates a permitted course of action, not a mandatory one. *See Bloom v. Missouri Board of Architects, Professional Engineers and Land Surveyors*, 474 S.W.2d 861, 864 (Mo.App.1971). Thus, the trial court was permitted, but not required, to use appellant's suggested form.

■ Appellant could not have been prejudiced by the instruction. All evidence before the jury pointed to the head injuries inflicted by appellant as the cause of death and there was never any contention that the victim died on a date other than December 3, 1979. There was no evidence of an intervening condition such as the blood clot or infection mentioned in Note 6. The instruction correctly required the jury to find that appellant struck the victim thereby causing the victim's death.

■ Turning to the second argument, it should first be noted that appellant's proposed instruction is a non-MAI–CR instruction. Non-MAI–CR cautionary instructions may be refused where the subject of the non-MAI–CR instruction is adequately covered by other instructions. *See State v. Quinn*, 594 S.W.2d 599, 605 (Mo. banc 1980). Here, the subject of the cause of death is adequately covered by the verdict-directing instruction. There was no error in giving the manslaughter instruction or refusing Instruction A offered by appellant.

Appellant's fourth point relied on alleges trial court error in the refusal to submit an instruction on assault in the third degree as a lesser included offense of the homicide. The point is without merit.

"It has consistently been held that an instruction on a lesser included offense is required only where there is evidence with probative value which could form the basis of an acquittal of the greater offense and a conviction of the lesser included offense." *State v. Hill*, 614 S.W.2d 744, 750[6] (Mo. App.1981). Thus, in the present case there must be evidence of probative value which would support an acquittal on the man-

defendant's actions on February 28, 1979. If the evidence in this case leaves in your mind a reasonable doubt as to whether the death was caused by the defendant, you must find the defendant not guilty.

  2. The defendant caused the death of Nolan Ligon if the defendant's actions were the proximate cause of the death. The actions of defendant must contribute mediately or immediately to the death, even if other causes contribute to

the death, so long as the other causes are not the proximate cause of death.

  3. In determining whether defendant caused the death of Nolan Ligon, you may consider all the facts and circumstances surrounding the death.

  4. If the evidence leaves in your mind a reasonable doubt as to whether the death of Nolan Ligon was caused by the defendant, you must return a verdict of not guilty.

slaughter charge and a conviction of third-degree assault.

The only evidence presented to the jury was that the victim died as a result of head injuries inflicted by appellant. There was no basis for a belief that the victim was physically injured without also believing that the victim was killed. "In this case there is a total absence of evidence with any probative value that [the victim's] death was caused other than by a blow of the defendant." *State v. Hill*, 614 S.W.2d at 750[7]. Any instruction based on the possibility that the victim was merely injured by appellant would have been sheer speculation.

Appellant's reliance on *State v. Kelly*, 16 Mo.App. 213 (1884) is misplaced. There this court was concerned with whether the evidence justified a common assault instruction where the greater offense was assault with intent to kill. The court focussed its attention on whether there was evidence of a lack of intent to kill because the two offenses differed only with regard to the required culpable mental states. Here, the difference between the two offenses consists of the difference between the harms inflicted. Because the evidence supports only one harm inflicted, death, the evidence justifies only homicide instructions. The point is denied.

Appellant's final contention is that the trial court erred in requiring him to elect between the defenses of excusable and justifiable homicide. Appellant chose to rely on justifiable homicide, but urged the trial court to submit both defenses.

Excusable homicide at one time was set forth by statute. § 559.050 RSMo.

1969. The repeal of that statute did not affect the defense of excusable homicide because the defense is part of the common law. MAI–CR2d 2.28, Notes on Use 1.

As set forth in MAI–CR2d 2.28, excusable homicide may take one of four forms. Appellant relies on the fourth type of excusable homicide.[4]

Although justification and excuse are normally inconsistent defenses, where the defense of excusable homicide is predicated upon a killing arising out of a sudden or sufficient provocation or sudden combat, and no dangerous weapon was used, both defenses may be submitted if justified by evidence other than the defendant's own testimony. *See State v. Zweifel*, 615 S.W.2d 470, 475[10, 11] (Mo.App.1981). The question here is whether the evidence justifies an instruction on excusable homicide.

The evidence indicates that appellant kicked and stomped on the victim after the victim had fallen and ceased all resistance. Appellant himself admitted kicking the victim while he was down, but could not remember whether the victim was conscious.

Because appellant kicked and stomped on a defenseless victim, the killing of the victim could not have been "without any undue advantage being taken" as the proposed excusable homicide instruction requires. Cf. *State v. Zweifel, supra* (combatants fell still locked in combat). *State v. Brinkley*, 354 Mo. 1051, 193 S.W.2d 49 (1946), cited by appellant is distinguishable. There, the defendant denied kicking the victim while the latter lay on the ground. 193 S.W.2d at 56[10]. Here, appellant nev-

---

**4.** One of the issues in this case is whether the death of Nolan Ligon was an excusable homicide. By "excusable homicide" is meant the killing of another by accident or misfortune under the circumstances submitted in this instruction. On that issue you are instructed as follows:

1. The state has the burden of proving beyond a reasonable doubt that the death of Nolan Ligon was not an excusable homicide. The defendant is not required to prove that the death was excusable. If the death was an excus-

able homicide, or if the evidence in this case leaves in your mind a reasonable doubt as to whether the death was an excusable homicide, then you must find the defendant not guilty.

2. You will acquit the defendant on the ground of excusable homicide and return a verdict of not guilty if the death of Nolan Ligon was the result of accident or misfortune upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner.

er denied kicking the victim. Combat may be excusable; kicking a man while he is down cannot.

The judgment is affirmed.

KELLY, P.J., and STEWART, J., concur.