**STATE of Missouri, Respondent,**

v.

**Ulysses C. HARRIS, Appellant.**

**No. 45974.**

Missouri Court of Appeals,
Eastern District,
Division Five.

June 19, 1984.

David O. Fischer, Richard M. Miller, St. Louis, for appellant.

John Ashcroft, Atty. Gen. by Dan Crawford, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

After a jury-waived trial, the trial court convicted defendant of two counts of possession of a controlled substance and sentenced him to ten years imprisonment on each count, to be served concurrently. We affirm.

Defendant was arrested on June 6, 1979, as he exited from a drug store in St. Louis County. The arresting officer was a member of the St. Louis County Police Department. He and a fellow officer, three police officers from the City of St. Louis and an agent from the Federal Drug Administration followed defendant to the drug store. The arresting officer observed defendant as he approached the prescription counter, saw him take three pieces of paper out of his pocket and hand them to the pharmacist. Upon his exit from the drug store, the officers arrested defendant without a warrant. An ensuing search produced a paper bag containing three prescription vials and a plastic bag containing three syringes. The prescriptions were made out to three different people, none of which was defendant. Two of the vials contained hydromorphone—trade named, Dilaudid, and one contained phenmetrazine—trade named, Preludin. Each of these drugs is a Schedule II controlled substance.

Defendant argues he was unlawfully searched and, therefore, reasons that the products of the search—the vials and syringes—should have been excluded from evidence. Defendant's motion to suppress this evidence was denied at a pretrial hearing. However, he has not furnished us with the transcript of that hearing. Defendant has, thus, failed to fulfill his responsibility to furnish a full and complete record which we need to review to determine the propriety of his complaint. Rule 81.12; *E.g. State v. Harris,* 564 S.W.2d 561, 565 (Mo.App.1978); *See Jackson v. State,* 514 S.W.2d 532, 533–534 (Mo.1974). This failure constrains us to rule against defendant on this issue. *State v. Ball,* 622 S.W.2d 285, 291 (Mo.App.1981); *State v.*

*Smith,* 612 S.W.2d 895, 897 (Mo.App.1981); *State v. Harris, supra* at 566.

Defendant also argues the state failed to prove he "knowingly" possessed the controlled substances in issue. We disagree.

■ In both counts, defendant was charged with violating § 195.020 RSMo 1978. "To sustain a conviction for possession of a controlled substance under § 195.-020, the state must prove that the defendant knowingly and intentionally possessed the proscribed substance." *State v. Barber,* 635 S.W.2d 342, 343 (Mo.1982). To meet this burden, the state must show the defendant knew the presence and character of the substance and consciously intended to possess it. *Id.* at 343.

■ In this case, as in most criminal cases, knowledge and intent are proved by circumstantial evidence. Thus, defendant's conviction is based primarily upon circumstantial evidence. To support a conviction based upon circumstantial evidence, the facts and circumstances must be consistent with each other, must tend to prove guilt and must also be inconsistent with every other reasonable hypothesis of innocence. *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976). The evidence, however, need not be conclusive of guilt and need not demonstrate the impossibility of innocence. *Id.* at 534. Moreover, in our review, we consider only those operative facts and inferences favorable to the state. *Id.* at 534.

■ With these often repeated rules as a guide, we review the evidence. The only testimony in the case came from one police officer. Defendant put on no evidence. Defendant was seen to hand a pharmacist three pieces of paper, and, upon his exit from the drug store, three vials of prescription drugs were found on him. Prescrip-

tion drugs imply the drugs are, at least, a restricted substance and are drugs not commonly taken. In addition, defendant carried three syringes, which, the officer testified, drug abusers use to inject a solution of the dissolved drugs into their veins. Although it is common knowledge that some diabetics carry syringes for injection of insulin, the officer testified the defendant told him he was not a diabetic but was a "junkie." Moreover, the names on the prescription vials were the names of three different people, none of which was the defendant. Even the most naive and credulous among us would not conclude defendant, a named "junkie," was a good Samaritan providing pick-up and delivery service for three different debilitated friends or acquaintances. Furthermore, the police were unsuccessful in their search for the three persons named on the vials.[1]

On circumstantial evidence less convincing than the foregoing facts, this court has inferred a defendant knowingly possessed a controlled substance. *See, e.g., State v. Williams,* 539 S.W.2d 530, 534–535 (Mo. App.1976); *State v. Lee,* 521 S.W.2d 180, 181–182 (Mo.App.1975). From the operative facts and inferences in the instant case, we have no difficulty in affirming the trial court's finding that defendant knowingly and intentionally possessed the controlled substances in issue and, therefore, was guilty as charged.

Finally, defendant contends he was denied his constitutional right to a speedy trial, guaranteed by the Sixth Amendment to the United States Constitution and similarly guaranteed by Article I, Section 18(a) of the Missouri Constitution.[2] Defendant filed a pretrial motion to dismiss the indictment based upon this alleged violation of his constitutional rights. The motion was

---

1. In its case, the state proved defendant had been convicted of 4 prior drug-related crimes—2 for possession and 2 for sale. In its brief, the state argues these prior convictions tend to show defendant's knowledge and intent and should be used as additional probative evidence. The record, however, shows these crimes were proffered by the state to show defendant was "a persistent offender for punishment under § 558.016" and "further, a habitual drug offend-

er ... under § 195.200.1(3) ...." We must conclude these crimes were admitted into evidence for the limited purpose requested and not to prove knowledge and intent.

2. In his brief, defendant focuses his argument on the alleged violation of his Sixth Amendment right to a speedy trial.

denied after a pretrial hearing. Again, defendant has failed to include the transcript of this hearing in his record on appeal. However, we find there is sufficient evidence on the record before us to address and dispose of this issue on the merits.

As noted, defendant was initially arrested on the present charges on June 6, 1979. According to defendant's pretrial motion to dismiss and his brief on appeal, he was subsequently released from custody following his arrest. On August 14, 1980, approximately 14 months after the arrest, defendant was indicted on the present charges. On October 2, 1980, defendant was taken into custody again and was arraigned on October 24. On September 10, 1981, some 11 months after his second arrest, defendant filed his motion to dismiss based upon an asserted violation of his right to a speedy trial. On October 22, 1981, this motion was denied. On November 18, 1981, defendant's jury-waived trial was held. This was approximately 29 months after his first arrest and 15 months after his indictment.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set out an ad hoc, four factor balancing test to determine whether a defendant was denied his right to a speedy trial. These factors are: (1) length of pretrial delay, (2) the reasons for the delay, (3) whether defendant has asserted his right to a speedy trial, and (4) prejudice to the defendant resulting from the delay. *Id.* at 530, 92 S.Ct. at 2192.

1) *Length Of Pretrial Delay*

■ The length of pretrial delay is "to some extent a triggering mechanism", for, unless the delay is presumptively prejudicial, no further inquiry need be made into the other factors which complete the test. *Barker v. Wingo, supra* at 530, 92 S.Ct. at 2192. The protection of the Sixth Amendment right to a speedy trial attaches at the time defendant becomes an "accused", *e.g. State v. Holmes*, 643 S.W.2d 282, 285 (Mo. App.1982), and a defendant becomes an "accused" at the time of an indictment or

information or an arrest whichever occurs first. *Id.* at 285. *See Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 303–304, 46 L.Ed.2d 205 (1975); *See United States v. Marion*, 404 U.S. 307, 318–319, 92 S.Ct. 455, 462–463, 30 L.Ed.2d 468 (1971). In the present case, defendant was arrested, released and then indicted on the same charges causing the first arrest. This raises the question whether defendant became an "accused" at the first arrest.

Previously, we have held that when a defendant is arrested, released and then re-arrested for the same offense, the defendant becomes an "accused" and his right to a speedy trial begins to run from the first arrest. *State v. Black*, 587 S.W.2d 865, 875 (Mo.App.1979). This holding, however, has been nullified recently by the United States Supreme Court in *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Noting a split in the jurisdictions, as we did in *Black*, the Court, over a vigorous dissent, held that "[o]nce charges are dismissed, the speedy trial guarantee is no longer applicable." *Id.* at 8, 102 S.Ct. at 1502. We must follow the holding and teaching of the *MacDonald* case.

■ Since defendant was released after the first arrest, the 14 month period from that arrest until the subsequent indictment is irrelevant to the issues here. However, 15 months elapsed from the filing of the indictment until the trial began. For our purposes here, we will assume this 15 month delay to be presumptively prejudicial, *see United States v. Washington*, 504 F.2d 346, 348 (8th Cir.1974) (14 month delay served as the "triggering mechanism"). *See generally,* Joseph, *Speedy Trial Rights On Application*, 48 Fordham L.Rev. 611, 623, n. 71 (1980) (generally, 8 months or longer is considered to be presumptively prejudicial). We now turn to the other three factors of the *Barker v. Wingo* test.

2) *Reasons For The Delay*

The 15 month delay between the indictment and the trial was due, for the most

part, to defendant's motions, requests for continuances and continuances granted at the request of both parties. "Where [the defendant] has contributed to the delay by asking for and being granted continuances, he cannot later successfully allege the denial of his constitutionally guaranteed right to a speedy trial." *State v. Campbell,* 612 S.W.2d 371, 374 (Mo.App.1980). Although the state is required to bring the defendant to a timely trial, the reasons for the delay in the instant case are weighed heavily against the defendant.

### 3) *Assertion Of The Right To A Speedy Trial*

Defendant did not assert his right to a speedy trial until September 10, 1981, some 11 months after his second arrest. Subsequent to defendant's assertion of the right, a continuance was granted at the request of both parties. Admittedly, defendant had no affirmative duty to bring himself to trial, but, obviously, this did not preclude him from seeking a quick trial after his second arrest. *See State v. Black,* 587 *supra* at 876. Defendant's actions contradict his present claim that his right to a speedy trial was violated. *See State v. Powers,* 612 S.W.2d 8, 13 (Mo.App.1980); *State v. Santonelli,* 600 S.W.2d 205, 207 (Mo.App.1980); *see also State v. Black, supra* at 876.

### 4) *Prejudice To The Defendant*

■ The factors to be assessed in determining whether delay resulted in prejudice to the defendant are (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the defendant's ability to defend himself. *Barker v. Wingo, supra* 407 U.S. at 532, 92 S.Ct. at 2193. Defendant focuses his argument on the last factor. Defendant claims the delay

made it nearly impossible to contact the witnesses he needed for his defense.

■ As previously demonstrated, the 14 month delay from defendant's first arrest to indictment is irrelevant to the issues here, and the 15 month delay from the indictment to trial was, for the most part, caused by defendant. Thus, if any delay worked any prejudice against defendant, he was the cause of the delay and, thus, the cause of the prejudice. More important, there is nothing in the record showing how the delay precluded defendant from locating or contacting his alleged witnesses.[3] To require reversal, the claimed prejudice resulting from delay "must be actual prejudice apparent on the record or by reasonable inference—not speculative or possible prejudice." *State v. Buckles,* 636 S.W.2d 914, 920 (Mo. banc 1982). Defendant's bald assertion of prejudice does not meet this standard.

Having weighed the four factors set out in *Barker v. Wingo, supra,* we conclude defendant's constitutional right to a speedy trial has not been violated.

Judgment affirmed.

DOWD, C.J., and THOMAS F. McGUIRE, Special J., concur.

---

**3.** The unverified motion to dismiss, signed by defendant's counsel, states:

"That the Defendant was prejudiced by the delay of the State as described above because he cannot and has not been able to locate DAVID KNIGHT and has heard that he has moved to somewhere in Texas, that the memory of EDNA DAVIS has faded and that RICHMOND BRAUN has been unwilling to talk with Defendant's counsel for the reason that he is afraid of being charged."

This motion is not self proving.