Winford L. STOKES, Appellant,

v.

STATE of Missouri, Respondent.

No. 48207.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 29, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 26, 1985.

Application to Transfer Denied
April 30, 1985.

the evidence of the case and is properly part of the record on appeal.

Robert J. Maurer, Asst. Public Defender, Clayton, for appellant.

Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Presiding Judge.

Winford L. Stokes, movant, appeals from a judgment denying his Rule 27.26 motion after an evidentiary hearing. We affirm.

His motion sought to vacate judgment imposing a sentence of death, following a jury trial, on a charge of capital murder. Section 565.001 RSMo:1978. This judgment was affirmed on appeal in *State v. Stokes*, 638 S.W.2d 715 (Mo. banc 1982).

Movant contends the trial court erred: (1) in upholding his conviction and death

sentence because, as a result of the ineffective assistance of his trial counsel, movant was forced to trial when the state withdrew its original plea offer; (2) in not finding a speedy trial violation when movant was arraigned one year and thirty-one days (396 days) after the filing of his indictment; and (3) in not finding a deprivation of his state and federal constitutional rights to effective assistance of counsel.

■ Our review is limited to whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.-26(j). The trial court's findings and conclusions are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made. *Gentile v. State*, 637 S.W.2d 30, 32 (Mo.App.1982).

Prior to his capital murder conviction in St. Louis County, movant pleaded guilty in the Circuit Court of the City of St. Louis on September 10, 1979, to second degree murder, two counts of first degree robbery, armed criminal action, two counts of escaping custody and stealing a motor vehicle. Movant was sentenced for the seven felonies to concurrent terms of imprisonment of fifty years. Movant's Rule 27.26 motion to vacate these convictions was denied and the judgment denying the Rule 27.26 motion was affirmed in *Stokes v. State*, 671 S.W.2d 822 (Mo.App.1984). We borrow freely from that opinion's recitation of facts without the use of quotation marks.

In September 1979, movant had seven felony charges, including capital murder, pending against him in the St. Louis Circuit Court, and another capital murder charge pending against him in St. Louis County. On the day set for the trial of the city charges the state offered to reduce the capital murder charge to second degree murder and recommend a sentence of fifty years with the sentence to run concurrent with the sentences for the other six felonies. The offer was conveyed to movant who wanted to know about the disposition of the pending capital murder charge in St. Louis County. The assistant city circuit attorney and defendant's attorney spoke with the first assistant prosecuting attorney in St. Louis County, who agreed to reduce the capital murder charge to second degree murder, and recommend fifty years to run concurrently with the sentences received in the city. This offer was conveyed to movant and he agreed to it. The city and county agreements encompassing all charges in the city and county were discussed with the city trial judge, who said he had no objection to the arrangement. Thereafter, defendant pleaded guilty to the seven felonies in the city and was sentenced in accordance with the plea agreement.

Approximately 10 days later, movant was transferred to St. Louis County. The county trial judge was informed of the plea arrangements and stated he had no objection to it. The state filed an amended information reducing the capital murder charge to second degree murder. According to defendant's attorney:

[a]t some point during the plea Winford decided he didn't want to deal. And the Judge said to him, "Well, are you going to plead guilty?" and he said, "No." and I said, "What's wrong?" and he said, "They're lying on me." And I said, "What do you mean they're lying on you?"

Apparently the newspapers had reported inaccurately the plea downtown and said that it was all consecutive time. And I said, "Well, you heard the Judge yourself downtown." But he dug his heels in and said, "No, I'm not taking any kind of a plea."

So at that point the state frankly got miffed and withdrew their offer. And the Judge said, well, there was nothing he could do about it. All he could do was schedule the case for trial.

That afternoon, movant's attorney spoke to movant and movant agreed to again accept the plea offer. The next day, movant's attorney communicated this to the office of the St. Louis County Prosecuting Attorney, but they refused to reinstate the offer. Following a jury trial, movant was convicted of capital murder.

22

Movant's first point alleges error in the court's failure to enforce the original plea agreement, i.e., reducing the capital murder charge to murder second degree and a concurrent fifty year sentence, since his trial counsel's actions deprived movant of effective assistance of counsel. The Rule 27.26 motion court specifically found that trial counsel had thoroughly explained the offer of the reduced charge with concurrent time to movant who encountered no problem when he entered his plea in the city. The court also found that movant's trial counsel had approached the county prosecutor's office the day after movant had refused to plead in the county to explain his client's actions in an effort to have the original offer of the reduced charge with concurrent time renewed. This finding is supported by substantial evidence as the facts previously recounted indicate.

Movant further argues in this point that the state should not have been permitted to withdraw its plea offer in light of the attendant circumstances, including movant's confusion over an inaccurate newspaper report, his partial performance of the total plea agreement by entering a guilty plea in the city, and the brevity of his consultation with his counsel prior to his court appearance in the county.

Movant argues that the plea bargain negotiated in the city and the plea bargain in the county are a single "package plea." Under contract principles, he theorizes his plea in the city constituted partial performance or detrimental reliance to estop the county from withdrawing its plea offer. The plea agreements, although arranged within the same time frame, are two separate bilateral contracts. The county was not bound to honor its offer where movant failed to keep his promise to enter his plea in the county.

The record clearly establishes that the movant, not the state, reneged on the plea agreement. But for the action of movant, he would have been sentenced in the county circuit court in accordance with the original plea agreement. By refusing to plead guilty, movant did not perform his part of the plea agreement. A prosecutor is justified in withdrawing from the plea agreement when the defendant does not comply with his part of the agreement. Where movant refused to plead guilty in open court and no guilty plea was entered, no constitutionally protected rights or liberty interests were triggered. *Accord Mabry v. Johnson*, —— U.S. ——, ——, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437, 442 (1984). Movant also contends that the failure of the prosecution to reinstate the offer, making it a "one-day only special," was unreasonable. We know of no duty imposed upon a prosecutor to keep a plea bargain open for any length of time, *accord United States v. Pleasant*, 730 F.2d 657, 664 (11th Cir.1984), especially where, as here, a prosecution's offer is rejected at the time for the entry of the plea. Movant's first point is without merit.

Movant's second point challenges as clearly erroneous the Rule 27.26 trial court's conclusion that the delay of over one year between movant's indictment and arraignment on the capital murder charge in St. Louis County was an issue properly cognizable on appeal as trial error and not at the 27.26 hearing. Points not raised in the trial court nor on direct appeal from a conviction as trial error ordinarily cannot be raised in a Rule 27.26 proceeding. Rule 27.26(b)(3). Mindful of this rule, movant asserts the delay in his arraignment violated his right to speedy trial guaranteed him under the Constitution of the United States, thus qualifying the issue for consideration here. However, our Supreme Court has declined to review trial errors of alleged constitutional dimension under Rule 27.26 in certain instances where, by reason of procedural default, the issue was not preserved for review on direct appeal. *See Schleicher v. State*, 483 S.W.2d 393 (Mo. banc 1972); *Fields v. State*, 468 S.W.2d 31 (Mo.1971). These cases are in harmony with the principle that to preserve a constitutional issue for appellate review in Missouri, it must be raised at the earliest time consistent with good pleading and orderly procedure, and must be kept alive

during the course of the proceedings. *Neal v. State*, 669 S.W.2d 254, 256 (Mo. App.1984). Otherwise, the failure to assert the constitutional right to a speedy trial at the onset reflects a defendant's apparent desire to delay his trial date. However, considering that Stokes has received the death penalty, we review the issue ex gratia on its merits, rather than rejecting this point outright on procedural grounds.

The right to speedy trial attached from the time of the indictment. *State v. Morris*, 668 S.W.2d 159, 162 (Mo.App.1984). The period considered in determining the length of delay is between the earliest of arrest, indictment, or information and trial. *Id.* Movant was indicted on June 12, 1978, and stood trial on October 22, 1979, a delay of approximately sixteen months.

■ The issue is whether the sixteen month delay between the time of the indictment and the time of trial resulted in a denial of movant's right to a speedy trial. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court utilized a four factor balancing test, to be applied on an ad hoc basis, in determining whether a defendant was denied his right to a speedy trial. These factors are: (1) length of pretrial delay; (2) the reasons for the delay; (3) whether defendant has asserted his right to a speedy trial; and (4) prejudice to the defendant resulting from the delay. *Id.* at 530, 92 S.Ct. at 2192.

■ First, the length of pretrial delay was sixteen months. We will assume the sixteen month delay to be presumptively prejudicial. *See State v. Harris*, 673 S.W.2d 490, 493 (Mo.App.1984) (Fifteen month delay presumed prejudicial.) Second, the reason for the delay between the indictment and the trial was due apparently to movant's incarceration in the City of St. Louis for several felonies, including capital murder, unrelated to the capital murder charge pending in St. Louis County. Although the state is required to bring the defendant to a timely trial, the reasons for the delay reflect no dereliction by the state. Third, we consider movant's assertion of his right to a speedy trial. Movant did not

assert his right to a speedy trial until his Rule 27.26 hearing. Additionally, although amounting to about one month, movant sought and obtained two continuances of his trial in St. Louis County. The inordinate delay in asserting the right to a speedy trial should weigh against a defendant. *State v. Morris*, 668 S.W.2d at 163[7]. Fourth, the factor of prejudice to defendant is considered. The factors to be assessed in determining whether delay resulted in prejudice to the defendant are: (1) prevention of oppressive incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the defendant's ability to defend himself. *State v. Harris* at 494[7]. To justify a vacation of judgment, "the claimed prejudice resulting from the delay must be actual prejudice apparent on the record or by reasonable inference—not speculative or possible prejudice." *Id.* Although a presumption of prejudice is created by the delay of sixteen months, the record is a true barometer of prejudice. The movant was already confined in the city on capital murder and other felony charges. The record does not indicate that the delay on the county charges caused movant anxiety or concern. Further, our search of the record fails to uncover any impediment to movant's ability to defend himself. Here, the record rebuts the presumption of prejudice and fails to support movant's contention. Point denied.

■ Movant's final point asserts that the failure of his trial counsel to have movant's guilty pleas in the City of St. Louis set aside or to properly prepare for the sentencing phase of movant's trial reflects ineffective assistance of counsel. To establish this, movant must show counsel did not exhibit the customary skill and diligence exercised by a reasonably competent attorney under similar circumstances. *Tate v. State*, 675 S.W.2d 89, 90–91[2] (Mo.App. 1984). Movant must "show that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2068[19], 80 L.Ed.2d 674, 698 (1984); *Smith v. State*, 674 S.W.2d 638, 640[4, 5] (Mo.App.1984).

■ Trial counsel's decision not to challenge the guilty pleas in the city was made in light of the knowledge that, if set aside, movant would probably face trial on the capital murder and other felony charges. The Rule 27.26 court properly found this decision to be a matter of trial strategy. Movant also challenges his trial counsel's failure to call his parents or certain expert witnesses to testify in his behalf during the sentencing phase of his trial.

■ In *Milton v. Procunier*, 744 F.2d 1091 (5th Cir.1984), the defendant argued his lawyer's failure to offer mitigating evidence at the punishment phase of his capital murder case amounted to ineffective assistance of counsel. The court rejected defendant's argument and concluded that the defendant failed to establish the *Strickland* test: that the work of his counsel was deficient and that this deficient performance resulted in prejudice to him. 744 F.2d at 1099. We note movant's claim that his trial counsel failed to present witnesses during the sentencing phase of his trial ignores testimony in the record that movant, advised he could testify if he wished, prudently declined to do so and also did not suggest any witnesses who might testify in his behalf. The likelihood that testimony of movant's parents in his behalf would have engendered sympathy in the jury is purely conjectural and, given movant's infrequent contact with his parents, remote. The two expert witnesses movant now proffers as willing witnesses would have testified only that the death penalty was not a deterrent and that the Bible opposes the death penalty. This evidence in no way relates to or mitigates movant's crime. Without deciding whether such testimony would have been proper had it been offered, we note that an attorney handling a trial is in a better position than anyone else to know how a witness's testimony may help or hinder his client. Trial counsel's decision not to call a witness is a matter of trial strategy which will not be lightly judged to be erroneous. *Smith v. State*, 674 S.W.2d at 640[6]. Finally, movant contends his trial counsel was ineffective because he failed to make a long, meaningful argument during the sentencing phase of movant's trial. We have reviewed trial counsel's and the prosecutor's arguments during the sentencing phase of movant's trial, as well as the closing arguments during the guilty phase of the trial. Trial counsel's statement, viewed in the context of the entire trial record and not just the excerpts which movant has isolated, contained strong arguments in movant's behalf. We conclude the trial court did not err in denying the movant relief under Rule 27.26.

Judgment affirmed.

STEPHAN, J., and FRED C. SCHOENLAUB, Special Judge, concur.