**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Alexander GARRETT,
Defendant/Appellant.**

**Alexander GARRETT,
Movant/Appellant,**

v.

**STATE of Missouri,
Respondent/Respondent.**

Nos. 56482, 58639.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 21, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 12, 1991.

James S. McKay, St. Louis, for defendant, appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff, respondent.

REINHARD, Presiding Judge.

Defendant appeals his convictions of murder in the first degree, § 565.020, RSMo 1986, assault in the first degree, § 565.050, RSMo 1986, and two counts of armed criminal action, § 571.015, RSMo 1986, and the denial of his motion for post-conviction relief pursuant to Rule 29.15. Defendant was sentenced as a prior offender by the court to life without parole, thirty years, and three years to be served consecutively.

Defendant's convictions resulted from the fatal shooting of his girlfriend Peggy and the wounding of the State's main witness at trial, Joe Harris. The facts, viewed in the light most favorable to the verdict, are as follows.

On the evening of April 13, 1987, Harris was in his apartment. His sister and his girlfriend were visiting him. The deceased victim came to visit. While she was there she made several telephone calls. She was then picked up by a girlfriend and left. She returned to Harris' house at approximately 5:00 a.m. She asked him to give her a ride to the defendant's house to retrieve a purse she had left there earlier in the evening. Harris testified that both he and Peggy talked to defendant on the telephone before leaving to pick up the purse. According to his testimony some controversy existed between defendant and the deceased victim. He reported that defendant said: "Joe, you can bring her over if you want, but I'm not giving Peggy anything.

If you want to it's okay with me. It's perfectly all right." He then got dressed and drove Peggy to defendant's residence in his van. When they arrived Peggy got out of the van and went upstairs to defendant's apartment. He waited for her. Five minutes later Peggy returned and got into the van but asked him to wait because defendant was coming down to talk to him. Defendant walked out and stood next to the passenger side of the van and talked to both Harris and Peggy. Harris testified that the conversation was relaxed, a "general conversation." At some point defendant climbed into the van and sat in the seat directly behind Harris, the driver. Harris testified that defendant had asked Peggy to go back upstairs with him several times. Each time she refused saying she needed to go home. After another five minutes Harris told defendant that he had to leave. "I remember being—something hit me in the back of my head and all this loud noise." He further testified that he fell out of his van and that defendant came over to where he lay in the street to shoot him again. After he had been taken to the hospital he identified defendant as his assailant. Defendant was arrested shortly after the incident.

The first police officer on the scene testified that when he arrived he saw Harris lying on the ground and Peggy "sitting in the passenger side seat of the van slumped over." The acting chief medical examiner for the City of St. Louis, Dr. Graham, testified that the deceased victim, Peggy, had been shot twice, once to the neck and once to the skull. He testified that the wound to her neck had been the fatal gunshot wound.

The State also called as a witness Henry Miller, a prisoner, who testified that defendant had confided in him when they were both in City Jail. This witness testified that defendant intended to shoot Peggy because she had taken $300 from him and spent it on cocaine.

Defendant testified and denied his involvement. He said that Harris had said, after being shot, that someone named "Sundance" had shot him. Defendant also claimed that Harris had believed that de-

fendant had "set him up" and that was why he was accusing defendant of being the attacker. The jury found defendant guilty of first degree murder, first degree assault and two counts of armed criminal action. This appeal followed.

■ Defendant contends that the evidence was insufficient to support instruction on murder in the first degree because the State failed to prove the essential element of deliberation. Section 565.020.1, RSMo 1986, defines this crime. "A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." The element challenged by defendant, deliberation, is defined in § 565.-002(3), RSMo 1986, as meaning "cool reflection for any length of time no matter how brief." Clearly, the evidence in the present case was sufficient for a "reasonable person," *see State v. Bradshaw,* 779 S.W.2d 617, 620 (Mo.App.1989), to conclude that defendant had considered the act he was convicted of well before its commission. The jury could find that he concealed the weapon used from his intended victims, engaged them in conversation for a substantial period of time and finally placed himself in a position from which he could easily shoot both of the occupants of the van.

■ Defendant's next two allegations of error both concern the testimony of the victim, Joe Harris. First, he claims that a statement by Harris during his direct testimony created such prejudice that a requested mistrial should have been granted. The challenged testimony was as follows:

Q [Prosecutor]: Do you know who the phone calls were to?

A: I think she called [defendant], too, once.

Q: Did you hear part of the conversation or anything?

A: No, I didn't. I remember hearing her saying something about, "If you keep playing with this gun somebody will get hurt," something to that effect.

At this point defense counsel objected and asked for a mistrial which the trial court denied. The court did, however, instruct the jury to disregard both the question and the answer. Harris' reference was to an incident that occurred earlier that evening during which defendant was allegedly seen flourishing a handgun. The police were called but no weapon was found.

■ Criminal defendants have the right to be tried only for the offense for which they are charged. "Proffered evidence will run afoul of this rule if it shows that the defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes" [citations omitted] *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989). However, a mistrial is only appropriate if the defendant has suffered prejudice as a result of the improper evidence. As in *Hornbuckle,* we believe that the witness' "vague references cannot be characterized as clear evidence associating [defendant] with other crimes." *Id.* The trial court has broad discretion in the decision of whether to grant a mistrial and will be reversed only for an abuse of that discretion. *State v. Roberts,* 779 S.W.2d 576, 579 (Mo. banc 1989). We see no abuse of discretion here.

■ Defendant next asserts that he should have been allowed to cross-examine Harris about drug use by him and by the deceased victim. Upon defendant's request at trial for the court's permission to cross-examine in these areas, the prosecutor objected:

There has been no evidence with regard to this. [drug use] Furthermore, we tried this case once before and never had any evidence like this before. I'm curious to find out where this is coming from since I never received notice of any kind or received any sort.

[Defense Counsel]: In the event my client testifies, it will be coming from my client.

[The Court]: That's why we are going to wait and see if we may make something relevant.... I just don't see that we should at this time let drugs walk across this stage. I'm going to make the witness available to you, and if for some reason he doesn't remain available I will

give a mistrial if we get to that point.... I think it's fair. Let's see if we have something.... So I'm just saying at this time there is no showing that the question and answer are relevant as probative of any of the circumstances in this case, but I am making the witness available to you.

First we note that the trial court has considerable discretion in determining the relevancy of evidence and the extent of cross-examination. *State v. Morris*, 668 S.W.2d 159, 164 (Mo.App.1984). In *Morris*, defendant attempted to introduce evidence concerning the victim's lifestyle to suggest that his death had been caused by something other than the head injuries inflicted by defendant. We held that:

> Appellant's proposed cross-examination about possible causes of death would not be relevant to any material issue and would simply parade the victim's character before the jury in an improper manner. The turbulent disposition of the victim is irrelevant absent a proper foundation, which defendant failed to lay. *Id.*

Similarly, in this case the defendant was given the opportunity to lay the foundation for such evidence and failed to do so. In addition, the trial court ordered Harris to remain available should the defense wish to recall him. No request to recall Harris to the stand was ever made. We conclude that defendant was unable to tie his allegations of drug use into his defense thus rendering such evidence irrelevant and prejudicial.

■ Defendant presents two instances of error by the motion court during its consideration of his Rule 29.15 motion. Defendant first claims that his trial counsel was ineffective because she failed to interview witnesses whose testimony could have discredited prosecution testimony from a fellow prisoner. In his evidentiary hearing, defendant mentioned several prisoners who were prepared to testify that Miller, who testified against defendant, did so from spite. Defendant's attorney at trial testified at the evidentiary hearing that she was aware of these possible witnesses but decided not to use them at trial because:

> I did not feel it was successful given the severity of the charges. You know, if you're going to lie on a homicide case, jealousy over drawing ability would not be a reason I think the jury would find credible. Also, I didn't feel there was a need to, because I think Mr. Miller hurt himself in his testimony.

The decision to impeach an opposing witness constitutes a choice of trial strategy which lies within the judgment of the counsel trying the case. *Richardson v. State*, 752 S.W.2d 919, 922 (Mo.App.1988). Our review of the evidentiary hearing transcript convinces us that counsel was aware of these witnesses and what their testimony would be and made the decision not to call them. Counsel is not to be judged ineffective based upon such a decision. *Mahaney v. State*, 660 S.W.2d 774, 775 (Mo.App.1983).

■ Defendant also contends that his trial counsel was ineffective because she failed to object to questions during cross-examination that exposed the jury to defendant's arrest record. First we note that during his direct testimony defendant admitted to being convicted of burglary and larceny in 1956. Under cross-examination he asserted that: "But I ain't been in no trouble since." He admitted that he considered being arrested on a felony charge being in trouble. At this point, the prosecutor asked about his prior arrests.

■ It is well settled that evidence of prior arrests is not admissible to impeach the credibility of a defendant unless defendant has "opened up" the issue of prior arrests. *State v. Ball*, 736 S.W.2d 551 (Mo.App.1987). By his testimony defendant opened the door to the questions asked of him. Thus, his counsel's failure to object to this admissible evidence was not ineffective assistance of counsel.

Judgment affirmed.

STEPHAN and CRANE, JJ., concur.