STATE of Missouri, Respondent,

v.

William TAYLOR, Appellant.

No. WD 51906.

Missouri Court of Appeals,
Western District.

Feb. 18, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 1, 1997.

Application to Transfer Denied
May 27, 1997.

Willard B. Bunch, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

SPINDEN, Judge.

A jury convicted William Taylor of first degree murder in his wife's death on Novem-

ber 10, 1994. Part of the evidence used to convict him was his admission that he caused his wife's death by running over her with a combine on the couple's farm in Nodaway County. On appeal, he charges the circuit court with four errors: (1) not suppressing inadmissible evidence; (2) allowing inadmissible testimony by the county coroner; (3) wrongly limiting defense counsel's cross-examination; and (4) inadequately responding to a jury question. We do not find reversible error, and we affirm the judgment of conviction.

Taylor does not dispute the sufficiency of the evidence to sustain his conviction. A jury convicted him of killing his wife, Debra Taylor. The evidence supported a theory that Taylor killed his wife by using the family's cat to lure his wife underneath a combine and causing the combine to roll over her, but the jury also heard evidence suggesting that Taylor killed his wife before he put her body under the combine.

Taylor admitted to his brother that he had killed the cat with a hammer and threw it under the combine to lure his wife under the machine. He told his brother that he used twine to pull a lever on the combine to cause it to roll over his wife when she tried to retrieve the cat. He told his brother that he had moved the combine back from his wife's body and hid the twine.

Taylor's brother reported this to the sheriff who interviewed Taylor. Taylor admitted causing his wife's death because he was depressed and believed that his wife wanted a divorce. He explained that he had intended to use twine to pull back on the combine's hydrastat lever, but that he panicked when he saw his wife crawl under the combine. He said that he did not attempt to pull the lever to stop the combine, but that he tried to grab his wife before being run over himself. He said that he had killed the cat before putting it under the combine.

The next day, law enforcement officers returned to Taylor's farm and took photographs and measurements, including measurements of the combine. They found a piece of twine near where Debra Taylor had been lying the previous evening. They seized the cat's corpse.

The coroner examined the cat and found bruising on its neck. The cat's skin was unbroken and had no other apparent sign of injury. The coroner concluded that the cat's death resulted from being hit with a rounded object. He disposed of the corpse after examining it.

A pathologist did an autopsy on Debra Taylor the day after she died. His examination determined that a blunt force had caused lacerations to her forehead and had bruised her left eye. She had contusions on her chest, fractured ribs on the left side and a crushed pelvis. The pathologist concluded that her facial injuries were not consistent with her being run over by a combine. He opined that a blow to her face was inflicted by something other than the combine and that the blow caused her death.

In July 1995, authorities obtained a search warrant and returned to Taylor's farm to remeasure the combine. They found the combine in a shed on property belonging to Taylor's father, Charles Taylor, and less than a mile from William Taylor's house. After seeing the combine in the shed, officers went to Charles Taylor's home, gave him a copy of the warrant, and asked him to unlock the shed. Charles Taylor complied. Officers moved the combine to a nearby John Deere facility to measure it and to photograph it. They videotaped this procedure.

The state charged William Taylor with first degree murder. He presented evidence at trial but did not testify. His defense was that he suffered a delusional disorder which made him unable to appreciate the nature and wrongfulness of his actions. The jury found him guilty as charged, and the circuit court sentenced him to life in prison without probation or parole.

In his first point on appeal, Taylor complains that the circuit court did not suppress evidence obtained pursuant to the July 1995 search warrant. He does not mention in his point relied on what evidence he believes should have been suppressed. In his argument, he referred to his second motion in which he asked the court to suppress a "John Deere combine, and a videotaped demonstration, experiment, or reenactment conducted

with the use of said combine[.]" He attacks the search warrant on the ground that the judge who issued it had previously disqualified himself from the case. He also claims the affidavit supporting the search warrant was defective and that the seized evidence constituted "fruit of the poisonous tree." The state responds in part that Taylor has no standing to assert that officers conducted an unreasonable search and seizure because officers seized it from the barn on the farm of Taylor's father, not from a barn on Taylor's property.

We need not resolve the matter because we do not discern any prejudice to Taylor. Assuming for the sake of our consideration that the warrant was defective, the state may use evidence obtained in violation of a defendant's constitutionally-protected privacy interest if it proves that the evidence would have inevitably been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *State v. Butler*, 676 S.W.2d 809, 812 (Mo. banc 1984). Moreover, an error in the admission of evidence does not necessarily mandate a reversal of a conviction. "Only prejudicial error is reversible error." *State v. Tettamble*, 720 S.W.2d 741, 742 (Mo.App.1986). If the state presented other evidence establishing essentially the same facts as the improperly admitted evidence, Taylor has suffered no prejudice and no reversible error. *State v. Shaw*, 915 S.W.2d 775, 783 (Mo.App.1996); *State v. Garrette*, 699 S.W.2d 468, 503 (Mo.App.1985).

■ Taylor first says that he was prejudiced because the evidence constituted "fruit of the poisonous tree" from an earlier warrantless search declared illegal by the circuit court. The circuit court granted Taylor's motion to suppress filed on June 2, 1995, and ordered the suppression of any evidence, including photographs, seized from Taylor's property on November 11 and 12, 1994 (the two days immediately after the mishap), and the officers' attempt to use twine to activate the combine.

In making his "fruit of the poisonous tree" argument, Taylor claims that the July 1995 search warrant depended on information obtained by officers during their warrantless search in November. We disagree. Before the officers' investigation on November 11 and 12, they were aware of the combine and its involvement in Debra Taylor's death because of the original "accident" investigation and because of Taylor's confession. Taylor's confession would have led the officers' to the combine regardless of the information obtained during the warrantless search.

■ Moreover, even if the search warrant was invalid because it was issued by a judge who had disqualified himself from the case, the information officers obtained from the combine would have been discovered inevitably by a legitimate search warrant. Taylor told them that he had used twine to cause the combine to roll over his wife. That independent, untainted source would have inevitably led them to the information obtained in the July 1995 search. Hence, the inevitable discovery rule of *Nix* made the evidence available to the state for use against Taylor. Taylor suffered no prejudice because officers would have obtained information about the combine inevitably.

■ Taylor next argues that he was prejudiced because the state did not attempt to obtain the combine pursuant to discovery rules 25.06 [1] and 26.02.[2] He suggests that use of these discovery procedures would have avoided any surprise. Taylor cites no authority to support the proposition that the discovery rules were the exclusive means by which to discover the combine. Moreover, Taylor can hardly claim surprise that the state would want to examine the combine after he admitted using it to kill his wife.

---

**1.** Rule 25.06(A) says, "Subject to constitutional limitations, the state may make a written motion in the court having jurisdiction to try the case requesting the defendant to disclose material and information not covered in Rule 25.05. Such motion shall specify the material or information sought to be disclosed. If the court finds the request to be reasonable, the court shall order the defendant to disclose to the state that materi-

al and information requested which is found by the court to be relevant and material to the state's case."

**2.** Rule 26.02(b) authorizes the issuance of a subpoena to compel the production of "books, papers, documents or other objects[.]"

■ Taylor then complains that the search and seizure of the combine rendered his mental disease and defect defense less effective. He asserts that the officers' measurements and videotape taken of the combine disputed any notion that Debra Taylor's facial injuries were caused by the combine. This allowed the state to argue that she may have struggled with her husband before dying.

Evidence independent of the officers' measurements and study of July 1995 also contradicted Taylor's assertion that he suffered a mental disease or defect. Several mental health physicians who had evaluated Taylor testified of their conclusion that he was not suffering from a delusional disorder or mental disease which would have precluded him from appreciating the wrongfulness of his conduct.

Taylor next asserts that the July 1995 search led to testing which permitted the state to assert that Debra Taylor may have struggled with Taylor before her death, and this diminished the persuasiveness of his mental disease or defect defense. Although the county coroner testified that the results of the July 1995 measurements confirmed his conclusion that Debra Taylor's facial injuries were not caused by the combine, the jury heard the same evidence from another source. A pathologist who performed an autopsy on Debra Taylor testified that her facial injuries were consistent with a blow to the face and were inconsistent with a theory that she had been run over by a combine. Taylor himself presented medical testimony which rebutted the so-called "struggle theory."

Taylor's second point complains that the circuit court erred in prohibiting him from cross-examining Debra Taylor's psychologist about problems she had with other family members and in prohibiting Taylor's introducing her treatment records. Taylor claims the jury heard a distorted picture of Debra Taylor's treatment because it heard testimony concerning her marital problems but did not hear about problems she had with other family members.

A trial court has considerable discretion in determining the relevancy of evidence and the extent of cross-examination. *State v. Garrett*, 813 S.W.2d 879, 882 (Mo.App.1991). We will not interfere with the circuit court's ruling on whether or not to admit evidence unless we discern a clear abuse of discretion. *State v. Childress*, 805 S.W.2d 729, 730 (Mo. App.1991).

During cross-examination, Taylor began questioning the psychologist about discussions he had with Debra Taylor regarding other family members. The state objected on relevancy grounds and pointed out that the parties had previously stipulated that this matter would not be raised at trial. The circuit court sustained the objection. A brief time later, Taylor mentioned Debra Taylor's relationship with her mother. The circuit court interrupted to discuss what the parties had agreed to and to question the relevancy of the evidence. The court pointed out that the parties had made an oral stipulation concerning this matter and found it to be binding for the entire case.

■ Stipulations are generally controlling, conclusive and binding on the courts. *See Griffin Contracting Company v. Hawkeye–Security Insurance Company*, 867 S.W.2d 602, 605 (Mo.App.1993). Because the rules of contracts apply, we construe a stipulation in terms of the surrounding circumstances and the intent of the parties. *Ezenwa v. Director of Revenue*, 791 S.W.2d 854, 859 (Mo.App.1990). Although relief from a stipulation may be granted in some circumstances, courts should never grant relief simply because the case went contrary to the expectations of one of the stipulators. *State v. Ward*, 745 S.W.2d 666, 671 (Mo. banc 1988).

■ In this case, the circuit court recited the terms of the stipulation on the record, outside the presence of the jury:

THE COURT: ... Again, to be clear, I understood there was an agreement at the bench at the commencement of trial that no reference to the mother and their relationship that she had with the victim as well as no reference to an abortion of the victim?

[DEFENSE ATTORNEY]: Correct.

THE COURT: Is that correct ... with what you all stipulated to?

[PROSECUTING ATTORNEY]: Yes, your Honor.

. . . .

[DEFENSE ATTORNEY]: Yes.

THE COURT: And the Court interprets that, for the record, the same, to apply not only while—with not only the case in chief but to the rebuttal or surrebuttal, whatever, the entire State versus Taylor, I felt that stipulation was in effect. That's one of the reasons that I'm sustaining the State's objection to any further inquiry, as I did on the bench.

In his brief, Taylor acknowledges, "Absent the stipulation, there is no support for the court's action sustaining the state's objection." The parties had stipulated that they would not mention Debra Taylor's relationship with her mother. Taylor confirmed that the circuit court's recitation of the stipulation was correct and that the parties agreed not to mention such matters. We find no conditional language that the agreement applied only to the case in chief, as Taylor now claims to have been his understanding. The circuit court did not err in limiting the questioning as to the stipulated matters.

In his final point, Taylor complains that the circuit court erred in responding to a jury question submitted during deliberations. The question asked, "In second degree life imprisonment, how long is a life sentence? Of that life sentence, what is the minimum number of years before being eligible for parole?" The circuit court's answer directed the jury to refer to its instructions.

■ Because Taylor did not preserve this issue for our review, we can review it, if at all, only as plain error under Rule 30.20. We decline plain error review. Taylor affirmatively waived our review of the issue when he indicated to the circuit court that he had no objection to the court's proposed response. *See State v. Zelinger,* 873 S.W.2d 656, 660 (Mo.App.1994); *State v. Scott,* 858 S.W.2d 282, 285 (Mo.App.1993).

For these reasons, we affirm the circuit court's judgment of conviction.

SMART, P.J., and ELLIS, J., concur.