**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Marcus T. GRANGER,
Defendant-Appellant.**

No. 46463.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 25, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Oct. 30, 1984.

Application to Transfer Denied
Dec. 18, 1984.

Henry B. Robertson, Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

Defendant was convicted by a jury of first degree robbery and sentenced as a dangerous offender to thirty years imprisonment. Defendant appeals. We affirm.

According to the state's evidence, defendant entered Lafayette Federal Savings and Loan, showed a revolver to a teller, Nancy Rixman, and ordered her to give him money. Ms. Rixman started giving him money out of the cash drawer when defendant ordered her to get down on the floor. Defendant then ordered another teller to give him the money. When she finished, defendant ordered her to get down on the floor and then left. The tellers gave the police a description of the robber and of a car they saw driving away. Defendant was arrested at the house of the owner of the car.

■ Defendant argues the trial court improperly prohibited his use of a prior inconsistent statement allegedly made by Rixman to impeach her. We disagree.

Defense counsel took the deposition of a police officer who questioned Rixman and the other teller after the incident. In response to the query whether the tellers had

changed their answers during his questioning of them, the officer stated:

The beard. They couldn't agree on the beard. There was a little discrepency (sic) on like, one said dark, the one lady, Rixman, said that comment. She's not really used to black people. She never seen very many black people before. To her the guy was dark.

At trial, defense counsel asked Rixman on cross-examination:

Q. Did you tell [the officer] that you were not really used to black people and you had never seen very many black people before?

Rixman answered:

A. I don't remember whether or not I said that.

Then, as part of his case, defense counsel asked to read the officer's deposition testimony into evidence to impeach Rixman, in effect, implicitly arguing as he now explicitly argues on appeal, that the officer was repeating Rixman's statement to him. The trial court concluded the statement was made by the officer not by Rixman and, therefore, denied defense counsel's request to read the officer's deposition testimony.

We agree with the trial court's conclusion. Sensibly read, the officer's deposition testimony is the officer's evaluation and, perhaps, his synopsis of his impression of Rixman's answers to his questioning. Thus, the record does not show the existence of a prior inconsistent statement made by Rixman, the essential pre-requisite for the desired impeachment. *See, e.g., State v. Jones,* 629 S.W.2d 589, 591 (Mo.App. 1981).

■ Apparently, to establish that Rixman actually made a statement or statements described by the officer's deposition testimony, defense counsel requested time to subpoena the officer. This request was

also denied. We find no abuse of discretion in this denial.

Defense counsel had ample opportunity to subpoena the officer prior to trial or during the state's case. Moreover, defense counsel did not explain to the trial court the reason for his not previously subpoenaing the officer, nor did he establish the time necessary to secure the presence of the officer and, most important, he made no offer of proof showing the differences there would be between the officer's deposition testimony and his testimony at trial. Thus, the trial court was given no opportunity to evaluate this request of defense counsel and, on this record, the court acted properly, even if it is assumed the officer's deposition testimony is ambiguous and, by itself, fails to show whether the statement was made by the officer or by Rixman. *See, e.g., Oakey v. Bond,* 286 S.W. 27, 29 (Mo.1926); *Sommer v. St. Louis Public Service Co.,* 262 S.W.2d 335, 339 (Mo.App. 1953).[1]

■ Defendant next argues he was denied his statutory right to a speedy trial. § 545.780, RSMo 1978.[2] We disagree.

Section 545.780 requires a defendant be brought to trial within 180 days of arraignment. In the present case, defendant was first arraigned on May 13, 1981, and was originally brought to trial on April 20, 1982. During voir dire, however, the state nolle prossed the case. An indictment on the same charges was issued on April 24, 1982. Arraignment was set for April 30, 1982, but was continued for defendant until May 26, 1982. The second trial began on September 14, 1982.

Defendant argues the statutory period for calculating the 180 days should begin to run from the day of the first arraignment, May 13, 1981, and end when the trial final-

---

1. Furthermore, any assumed error and presumed resulting prejudice would be rebutted by Rixman's face to face encounter with the robber during the robbery.

2. During the pendency of this appeal, former § 545.780, RSMo 1978 was repealed and a new § 545.780 was enacted. § 545.780, RSMo Supp.

1984. The new statute eliminates "both the 180-day rule and the need for explanations of all delays in the record." *State v. Collins,* 669 S.W.2d 933, 941 (Mo.banc 1984) (Welliver, J., dissenting). Under this new, more flexible statute, defendant would not have been denied his statutory right to a speedy trial.

ly began, September 14, 1982, a total of 489 days. Defendant contends the state's nolle prosequi should be treated as an unexcludable delay occasioned by the state or as a continuance unsupported by record findings of the court. Under present existing interpretation and application of § 545.780, we are constrained to disagree.

In calculating the statutory 180 day period, two seemingly inconsistent approaches surface when a nolle prosequi is involved. One method uses the date of the second (or final) arraignment as the starting date, *see, e.g., State v. Mask*, 655 S.W.2d 832, 833 (Mo.App.1983); *State v. Jackson*, 645 S.W.2d 725, 728–29 (Mo.App.1982); *State v. Allen*, 641 S.W.2d 471, 475 (Mo.App.1982); the second uses the date of the filing of the nolle prosequi, *see, e.g. State v. Lawson*, 630 S.W.2d 185, 189 (Mo.App.1982). We need not resolve this conflict. Under either approach, defendant was brought to trial within the statutory period of 180 days. Therefore, defendant was not denied his statutory right to a speedy trial.[3]

Defendant also contends he was denied his constitutional right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution. We disagree.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set out an ad hoc, four factor balancing test to determine whether a defendant was denied his right to a speedy trial. These factors are: (1) length of pretrial delay, (2) the reasons for the delay, (3) whether defendant has asserted his right to a speedy trial, and (4) prejudice to the defendant resulting from the delay. *Id.* at 530–31, 92 S.Ct. at 2191–92.

### (1) *Length of Pretrial Delay.*

■ The length of pretrial delay is "to some extent a triggering mechanism", for, unless the delay is presumptively prejudicial, no further inquiry need to be made

into the other factors which complete the test. *Barker v. Wingo, supra* at 530, 92 S.Ct. at 2191. The protection of the Sixth Amendment right to a speedy trial attaches at the time defendant becomes an "accused", *e.g. State v. Holmes*, 643 S.W.2d 282, 285 (Mo.App.1982), and a defendant becomes an "accused" at the time of an indictment or information or an arrest whichever occurs first. *Id.* at 285. *See Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975); *United States v. Marion*, 404 U.S. 307, 318–19, 92 S.Ct. 455, 462–63, 30 L.Ed.2d 468 (1971). In the present case, defendant was arrested, charged and, as noted, the charge was nolle prossed. Defendant was recharged on the same offenses. This raises the question whether defendant became an "accused" at the first arrest.

■ For our purposes here, we assume defendant became an "accused" at the time of the first arrest. *Compare United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982) *with State v. Black*, 587 S.W.2d 865, 875 (Mo. App.1979). *See also State v. Harris*, 673 S.W.2d 490 (E.D.Mo.App.1984). Therefore, the delay from arrest to trial in question here would be 19 months. This period of 19 months is presumptively prejudicial. *See, e.g., State v. Holmes*, 643 S.W.2d 282, 287 (Mo.App.1982); *United States v. Washington*, 504 F.2d 346, 348 (8th Cir.1974).

### (2) *Reasons for the Delay.*

■ The 19 month delay was due, for the most part, to defendant's motions, requests for continuances and changes of attorneys. The filing of the nolle prosequi resulted in a delay of only one month. Moreover, there is no indication from the record that the nolle prosequi was a deliberate or intentional tactic used by the state to gain ad-

---

**3.** No useful purpose would be served in discussing the rationales supporting these two different approaches. We do note defendant argues that, under either approach, the state's use of the nolle prosequi here and in similar situations could nulify § 545.780 by simply filing a nolle prosequi before the 180 days had run and then re-charging the defendant. The state could, thus, "occasion" a delay but not be "charged" for it under the provisions of the statute. We are attracted by defendant's logic. Our courts, however, if likewise attracted, were not pursuaded to adopt this logic.

vantage over defendant. "[W]here [the defendant] has contributed to the delay by asking for and being granted continuances he cannot later successfully allege the denial of his constitutionally guaranteed right to a speedy trial." *State v. Campbell,* 612 S.W.2d 371, 374 (Mo.App.1980). Although the state is required to bring the defendant to a timely trial, the reasons for the delay in the instant case are weighed heavily against the defendant.

(3) *Assertion of the right to a speedy trial.*

 Defendant did file a number of pro se requests for a speedy trial. These pro se requests were made, however, while defendant was going through numerous changes of attorneys. There are at least five different trial attorneys of record. We must conclude that each of these attorneys needed time to prepare what he or she considered a proper defense. One attorney specifically "waived" any right to a speedy trial. Under these circumstances, defendant's pro se assertions of his right to a speedy trial do not weigh heavily against the state.

(4) *Prejudice to defendant.*

Defendant does not show the delay prejudiced him. The state's case, however, was based primarily on eyewitness identification, and, if delay causes memories to fade, the state was prejudiced, not defendant. Moreover, the delay, for the most part, was caused by the necessity of providing defendant with numerous different trial attorneys and, apparently, permitting each of them time to prepare. Such delays cannot be viewed as prejudicial to defendant.

In his brief defendant also asserts "[i]nsofar as prejudice can be proved ..., defendant can show it." To require reversal, however, the claimed prejudice resulting from the delay "must be actual prejudice apparent on the record or by reasonable inference—not speculative or possi-

ble prejudice." *State v. Buckles,* 636 S.W.2d 914, 920 (Mo. banc 1982). Defendant's bald assertion of prejudice does not meet this standard.

Judgment affirmed.[4]

DOWD, P.J., and GALLAGHER, J., concur.

---

**4.** Defendant filed a pro se brief. This Court does not consider a pro se brief when the de-fendant is represented by counsel. Rule 3.062, E.D.Mo.