**STATE of Missouri, Respondent,**

v.

**Sherriad WHITE, Appellant.**

**No. 48700.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 13, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 9, 1985.

Application to Transfer Denied
May 29, 1985.

Macarthur Moten, St. Louis, for appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Chief Judge.

Defendant was convicted of manslaughter. In accordance with the punishment assessed by the jury, the court sentenced defendant to ten years' imprisonment. He appeals, claiming infringement of his constitutional right to a speedy trial. We affirm.

In November of 1982, five-year-old Charles Akins moved in with his aunt and uncle (defendant) at the request of his mother, who was homeless and unable to support Charles. Defendant and his wife took Charles in and supported him in the same manner as their own two children. Charles was hyperactive and had some behavioral problems at school. On February 9, 1983, after the children came home from school, defendant's son reported that school personnel were no longer going to allow Charles to stay and play after school because Charles had created a disturbance with a wire, a pan of water, and an electrical outlet. Defendant's wife asked defendant to give Charles a "whooping" as punishment.

Defendant spanked Charles with a belt, and then had Charles stand in a corner for a period of time. Defendant's wife and children left the house for a school meeting during that time. Defendant again spanked Charles, striking him severely as he tried to escape. Defendant then had Charles stand in the corner where he cried and trembled. Some time later, defendant sent Charles to bed in defendant's room. Charles limped as he went to bed. Later, when the wife returned and Charles was moved to his own bed, he was non-responsive. Defendant called an ambulance, and Charles was pronounced dead at the scene. Defendant made a taped statement to police in which he admitted striking the child and stated, "I guess this time I may have got carried away. ..."

The state filed a complaint on February 10, 1983, and defendant was indicted for manslaughter on February 22. Trial was set for March 21, but the cause was continued twice for the state and trial was reset for June 13. On June 15, before trial had begun, defendant was indicted for second degree murder based on the same facts. On the following day, the manslaughter indictment was suspended.

Defendant's murder trial was set for July 25, 1983. However, the state was granted three continuances and trial was reset for November 14. On November 16, after a jury was selected and pretrial motions were heard and ruled upon, the state filed a memorandum of nolle prosequi "due to the fact the state elects not to proceed at this time." It appears from the record that a witness for the state was unavailable at that time.

On the same day, the state filed yet another complaint against defendant, and defendant was again indicted for second degree murder. On November 30, defendant filed a motion to dismiss the indictment, alleging infringement of his right to a speedy trial. The court overruled the motion, and set trial for January 15, 1984. After two continuances for the state and one for defendant, trial began on March 26.

During the more than thirteen months from initial arrest to trial, defendant was incarcerated for eighteen days after the manslaughter indictment, twenty-two days

after the first murder indictment, and four months after the third indictment. While in prison after the third indictment, defendant obtained an eighteen-day continuance. Of the seven continuances for the state, five were granted because the state's attorney was in another trial.

On appeal, defendant's sole point is:

The trial court erred in overruling defendant's proper motions to dismiss the second-degree murder indictment against him for failure to prosecute because said action denied defendant his right to a speedy trial as secured by the sixth amendment of The United States Constitution in that defendant was seriously prejudiced by the thirteen-month delay between his initial arrest and subsequent trial.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court analyzed the sixth amendment right to a speedy trial when it rejected a defendant's claim of infringement. This analysis has been adopted in Missouri. *See, e.g., State v. Bolin*, 643 S.W.2d 806 (Mo. banc 1983). In *Barker*, the defendant was indicted for murder. The delay from arrest to trial was more than five years, and the state had obtained sixteen continuances. Defendant did not object to the delay until three and a half years after the arrest. Speaking for a majority of the court in a unanimous decision, Justice Powell stated:

The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. . . .

. . . .

. . . [U]nlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to a speedy trial does not *per se* prejudice the accused's ability to defend himself.

407 U.S. at 519–21, 92 S.Ct. at 2186–87. Thus, merely because there has been a lengthy delay does not mean the speedy trial right has been infringed so as to require a reversal. Rather, the Court set out an ad hoc balancing test to aid in determining whether an infringement has occurred. 407 U.S. at 530, 92 S.Ct. at 2192.

 The first factor to be weighed is the length of the delay. Unless the length of delay is "presumptively prejudicial," there is no need to inquire into the other three factors. Whether a given length of time triggers further inquiry depends upon the circumstances of each case; for example, "[t]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious . . . charge." 407 U.S. at 531, 92 S.Ct. at 2192. For purposes of the sixth amendment analysis, the length of delay is measured from the time defendant becomes an "accused," either by indictment or when he is actually restrained by arrest and charged. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); *State v. Black*, 587 S.W.2d 865, 872 (Mo.App. 1979). Here, because defendant continually faced charges from the time of initial arrest until trial, he became an "accused" when he was first arrested and charged, more than thirteen months before he was tried. *See State v. Granger*, 680 S.W.2d 258 (Mo.App.E.D.1984). Although Missouri cases establish no exact formula for determining whether this delay is "presumptively prejudicial", as a general rule our courts hesitate to preclude further inquiry into the *Barker* factors. *See State v. Bolin*, 643 S.W.2d at 813–14. We find that the delay in the circumstances of this case warrants further inquiry. *Cf.* the following delays held to be "presumptively prejudicial": *State v. Bolin*, 643 S.W.2d 806 (Mo. banc 1983) (seven months in a burglary case); *State v. Buckles*, 636 S.W.2d 914 (Mo. banc 1982) (fifteen months in a capital murder case); *Stokes v. State*, 688 S.W.2d 19 (Mo.App.E.D.1985) (sixteen months in a capital murder case); *State v. Granger*, 680 S.W.2d 258 (Mo.App.E.D.1984) (fifteen months in a robbery case); *State v. Harris*, 673 S.W.2d 490 (Mo.App.1984) (fifteen months in a drug possession case); *State v. Morris*, 668 S.W.2d 159 (Mo.App.1984) (twenty-eight months in a manslaughter case).

■ The second factor to be weighed is the reason for the delay. If the state has deliberately hampered the defense, this should weigh heavily against the state. If the delay is due to the state's negligence or overcrowded courts, this weighs less heavily against the state. If the delay is for a valid reason, such as a witness who is unavailable, it is justified and is not to be weighed against the state. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. Here defendant's request for a continuance contributed eighteen days to the delay. Five of the state's continuances were granted because of conflicting trials. These are not weighed heavily against the state, although the state is ultimately responsible for such circumstances. *Id.* The second indictment was for the more serious charge of second degree murder, and one of the state's witnesses was absent at the time of trial. There is no indication on the record that the state was deliberately hampering the defense. We weigh this factor against the state, although not heavily.

■ The third factor under *Barker* is when and how the defendant asserted his right to a speedy trial. 407 U.S. at 531, 92 S.Ct. at 2192. In this context, the right is again different from other constitutional rights in that a delay may or may not work to the defendant's benefit. Thus, the Court set no rigid requirement for when the right must be asserted, but rather held that the circumstances surrounding the assertion or failure to assert comprised one of the factors to be weighed. 407 U.S. at 526, 92 S.Ct. at 2190. The Court also noted that the defendant in that case had not asserted the right through a motion for an immediate trial, but moved to dismiss the indictment, thus indicating a desire to avoid trial rather than to have a speedy trial. 407 U.S. at 534–35, 92 S.Ct. 2194. Here, defendant likewise first asserted the right in a motion to dismiss on November 30, 1983. This was more than nine months after the initial arrest and complaint. Although the defendant did nothing to hamper the commencement of his trial, he neither objected to the state's continuances

nor asked for his trial to begin quickly. We weigh this factor against defendant.

■ The final and most important of the *Barker* factors is whether the delay actually prejudiced the defendant. Analysis of this factor encompasses three interests which are protected by the right to a speedy trial: (1) prevention of oppressive pretrial imprisonment; (2) minimization of defendant's anxiety and concern; and (3) limitation of the possible impairment of the defense. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2192–93. The most important of these interests is the last. *Id.* "The resulting prejudice to require reversal must be actual prejudice apparent on the record or by reasonable inference—not speculative or possible prejudice." *State v. Buckles*, 636 S.W.2d 914, 920 (Mo. banc 1982) (citing *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) ).

As to the first two interests, defendant complains that the thirteen month delay and five months of incarceration caused "lost earnings and the hard feelings of his employer," and that "the prospect of being held responsible for [the child's] untimely death weighed heavily upon him." While these claims are no doubt true, we believe they are outweighed by the lack of impairment to his defense. We also note that defendant's own request for a continuance was made while he was in prison, thus prolonging his incarceration. Defendant does not claim the loss of a witness or loss of a witness' memory; rather, he claims that with the money he would have earned had he not been incarcerated during the delay, he could have hired an expert to investigate other possible causes of the child's death. This claim is speculative and not supported by the record. On balance, we find that defendant was not prejudiced by the delay.

■ In balancing the four factors of the *Barker* analysis, we note that the only available remedy for infringement of the right to a speedy trial is "the unsatisfactorily severe remedy of dismissal of the indictment." *Barker*, 407 U.S. at 522, 92

S.Ct. at 2187–88. Although the state could and should have acted more quickly than it did, we are persuaded that defendant's constitutional right to a speedy trial was not infringed. Affirmed.

DOWD and CRANDALL, JJ., concur.