**STATE of Missouri, Respondent,**

v.

**Walter Bernard WHITE, Appellant.**

**No. WD 36596.**

Missouri Court of Appeals,
Western District.

Jan. 21, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 4, 1986.

Application to Transfer Denied April 15, 1986.

Fred Duchardt, Public Defender, Katherine E. Ladesh, Asst. Public Defender, Liberty, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P.J., and PRITCHARD and BERREY, JJ.

BERREY, Judge.

Appellant, referred to herein as defendant, was charged with robbery, first degree, of the drive-thru facility of the National Bank of North Kansas City on June 16, 1981. He was tried by a Clay County jury on September 12, 1984, and found guilty and sentenced to twenty years (20) at the Missouri Division of Corrections. Defendant does not contest the sufficiency of the evidence. Although defendant raises numerous points in his motion for a new trial, he has only briefed and argued those points relating to the trial court's adverse ruling on his motion to dismiss. The defendant alleges the trial court erred in overruling his motion to dismiss because the state (1) failed to prosecute him timely, (2) denied him a "speedy trial," and (3) because the Uniform Mandatory Disposition of Detainers Act required dismissal.

The facts very briefly are that defendant and a James Brooks went to the bank about 5:00 a.m. on June 16, 1981. The defendant hid in some bushes and when the

bank manager arrived and unlocked the bank he accosted her and forced her into the bank at gun point. Defendant next forced the manager to open the safe whereupon he then filled a sack with money. At that juncture defendant ordered the manager into the bathroom and left the bank. On the way out of the bank he dropped the money and Brooks started to go back and retrieve the money when they observed a police car approaching. The defendant got in the trunk and Brooks drove off while the defendant pulled the trunk lid shut. The trunk lid closing was observed by the police and when the car was stopped Brooks and defendant were arrested.

The facts leading up to defendant's motion to dismiss are, to say the least, unclear. Nevertheless, an attempt will be made to chronologically set forth the happenings herein.

On June 16, 1981, a warrant was issued by Associate Circuit Judge Bills.

On June 23, 1981, Richard McFadden, attorney, filed application for bond reduction. The bond was reduced to $10,000 and defendant waived the preliminary hearing.[1] At this juncture it should be noted that defendant has steadfastly denied McFadden was his attorney.

On June 25, 1981, an information was filed in circuit court charging defendant with robbery in the first degree.

On September 30, 1981, the case was called for trial, and the defendant failed to appear. His bond was forfeited and a capias warrant was issued for his arrest.

On September 30, 1981, sometime later in the day, the hour not discernible from the record, the defendant was produced in open court by George Lucas, his bondsman, who surrendered the defendant to the court. The forfeiture was then set aside.

The defendant was in the custody of a U.S. Marshall and the court therefore did not withdraw the capias. At this time defendant stated McFadden was not his law-

yer and "I didn't get a chance to finish paying" him. Defendant stated he had a lawyer for his federal cases but not for this case. Following a colloquy at the bench, the court advised the defendant to make application to the court for an attorney if he was indigent. The court then set the case for trial October 5, 1981. At this juncture, McFadden appeared and advised the court he did not represent defendant and did not appear at the circuit court arraignment. The defendant then stated he would get his own attorney. The court advised defendant that the case was set for trial Monday morning, (10–5–81) unless he requested something else and defendant replied, "All right sir." At the conclusion of these happenings the capias was left open.

Finally, on September 30, 1981, the following occurred:

Mr. Kenneth C. Hensley appeared on behalf of the state.

THE COURT: CR381–957FX, State versus White, Walter B. White.

(No response)

I guess he's not in jail. No, he's the one that was in the custody of the Federal Marshall.

Nobody got a writ out, I guess.

Sheriff, call the name Walter B. White three times, please.

(Bailiff does so.)

I ordered him into your custody last, on September 30th, Mr. Sheriff.

BAILIFF: Your Honor, I had no indication of that.

THE COURT: Comes now state by assistant prosecuting attorney and defendant fails to appear. Capias warrant ordered to issue remanding defendant to the custody of the sheriff, Clay County, Missouri.

BAILIFF: Yes, your honor.

October 10, 1981, is the approximate date given by defendant that he was sentenced on his federal charges.

---

**1.** A not uncommon practice to accept a waiver of preliminary hearing in exchange for bond reduction in appropriate cases.

On October 17, 1981, defendant was transferred to the U.S. Penitentiary, Leavenworth, Kansas, and then four days later defendant was transferred to the U.S. Medical Center at Springfield.

In March of 1982, defendant was transferred back to Leavenworth.

On June 7, 1982, defendant filed a motion to dismiss for lack of prosecution in Clay County Circuit Court with a copy to the chief judge of the Clay County court.

On July 26, 1983, defendant filed a motion for appointment of counsel, an affidavit of poverty and an affidavit of mailing; all of which bear the notorized date of July 20, 1983.

On August 10, 1983, the defendant's attorney filed a request for discovery dated by the attorney as July 10, 1983. Certificate of mailing to the prosecuting attorney was also dated July 10, 1983.

On February 6, 1984, a letter was sent from the Bureau of Prisons to the prosecutor's office regarding the necessary forms to deliver temporary custody of defendant to Clay County under the Interstate Agreement on Detainers Act.

Among the enclosures to the Clay County prosecutor is Form FP1–LOM–1–14–77, Agreement on Detainers Certificate of Inmate Status, which indicated that a detainer was on file at Leavenworth for defendant for first degree robbery and for failure to appear.

On June 13, 1984, defendant *pro se*, filed an "Amended Motion To Dismiss For Lack Of Prosecution, Denial Of Due Process, Lack Of Jurisdiction Of Subject And Subject Matter, In Effective Council [sic], Denial Of Liberty, Invalid Failure To Appear Warrant, And Disruption Of Rehabilitational Processes and An Injunction Pending Proceedings, and the disallowment Of Temporary Custody, And Quashing The Detainer" along with the certificate of mailing; a list of issues to be resolved; and various correspondence.

Among the many documents filed by defendant included the information on the federal charges:

On 01–16–81, White, acting alone, accosted a female employee of the Mark Plaza State Bank, Kansas City, Kansas, at gunpoint as she was sitting in her car, awaiting the arrival of other employees. The time of day was approximately 5:30 a.m. White forced his victim to unlock the bank and once inside, ordered her to open the vault and night depository. White during the progress of the robbery, stated that an accomplice was observing her home and intimated that her family would be harmed if she failed to comply with his immediate demand. After securing over $20,000, White forced the victim to lie on the floor and then successfully absconded.

On September 4, 1984, a motion to dismiss was filed by defendant's attorney.

On September 17, 1984, the prosecuting attorney's office and the defendant's attorney agreed to a stipulation.

The defendant alleges he notified the prosecuting attorney's office in 1982 of his desire to obtain disposition of the outstanding Clay County charges. The trial court did not err in denying defendant's motion to dismiss.

■ The Sixth Amendment to the United States Constitution guarantees a defendant the right to a speedy trial. What may be a speedy trial in one instance may be deemed dilatory in another. This amendment does not guarantee an instant trial, or a prompt trial. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Brooks*, 675 S.W.2d 53, 56 (Mo.App.1984).

In *State v. White*, 689 S.W.2d 699, 703 (Mo.App.1985) the court goes to great length analyzing *Barker, supra,* and is recommended reading for "speedy trial" issues. The court discusses in detail the "balancing test" of *Barker* and how it is to be applied. No exact formula has been established in Missouri to measure and ascertain if a trial delay is presumptively prejudicial. Each case and its facts must be examined. As the *Barker* court noted:

The length of the delay is to some extent a triggering mechanism. Until

there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerable less than for a serious, complex conspiracy charge.

*Barker, supra,* 407 U.S. at 530-1, 92 S.Ct. at 2192.

The court in *White, supra,* at 702, noted that unless the delay was presumtively prejudicial it was not necessary to look at the other three factors of the *Barker* balancing test. As noted no formula exists for this determination and as such it is a safer course to consider the thirty-nine month delay presumptively prejudicial and examine the rest of the *Barker* tests: (1) the reason for the delay (2) when and how the defendant asserted his speedy trial right and (3) whether the defendant was prejudiced by the delay.

This court must agree with the state's position regarding the reason for the delay. As noted in *White, supra,* at 703 if the delay is due to the state's deliberate action, then the delay must be weighed heavily against the state. If the delay is caused by the state's negligence such is weighed against the state, but to a lesser degree than if the state overtly interfered with the defense. Finally, if the delay is for a valid reason it should not be held against the state. *Id.* The defendant was out of the jurisdiction and in federal custody on October 5, 1983, when his case was first set for trial. He remained in federal custody until June, 1985 when he was released to Clay County on the detainer.

How the defendant asserted his speedy trial right is a matter of some disagreement. Defendant alleges that by fil-

ing a motion for dismissal in June, 1982 he fulfilled his obligation.

In *White, supra,* at 703 citing *Barker,* the court held:

The third factor under *Barker* is when and how the defendant asserted his right to a speedy trial. 407 U.S. at 531, 92 S.Ct. at 2192. In this context, the right is again different from other constitutional rights in that a delay may or may not work to the defendant's benefit. Thus, the Court set no rigid requirement for when the right must be asserted, but rather held that the circumstances surrounding the assertion or failure to assert comprised one of the factors to be weighed. 407 U.S. at 526, 92 S.Ct. at 2190. The Court also noted that the defendant in that case had not asserted the right through a motion for an immediate trial, but moved to dismiss the indictment, thus indicating a desire to avoid trial rather than to have a speedy trial. 407 U.S. at 534-35, 92 S.Ct. 2194. Here, defendant likewise first asserted the right in a motion to dismiss on November 30, 1983. This was more than nine months after the initial arrest and complaint. Although the defendant did nothing to hamper the commencement of this trial, he neither objected to the state's continuances nor asked for his trial to begin quickly. We weigh this factor against defendant.

The acts of the defendant must in this case be weighed against him.

Finally, the defendant alleges that because of the delay his co-defendant Brooks, who is now deceased, cannot testify that he coerced defendant into hiding in the bushes in the early morning hours, accosting the bank manager and robbing the bank.[2] This allegation of defendant is totally unsupported by the record. The record is devoid of any evidence that would support this theory. The defendant admitted he was to receive one-half the proceeds; a doubtful arrangement for one forced to rob the bank. The defendant pulled the trunk lid down to conceal himself from the police

2. A modus operandi surprisingly similar to the bank robbery that put him in federal custody.

rather than escaping if he was, in fact, being coerced by Brooks. Finally, had defendant been available for trial as originally scheduled, Brooks would have been available to defendant. Such prejudices must be established by the record and cannot be speculative. The fact that defendant waited months to inform authorities of the alleged coercion and that the coercer and co-conspirator had in the interim died can only lead to one reasonable conclusion: The defendant's story is just that!

As shown by the record defendant filed a motion to dismiss in June, 1982. A letter of inquiry dated November 12, 1982, appears in the legal file from a Kansas attorney, J. Paul Marion, III, to the Clay County Prosecuting Attorney. The letter makes no demands for a speedy trial but seeks information about the status of the Clay County case.

Defendant next alleges that he was denied a speedy trial under § 545.780, RSMo 1978 (repealed in 1984). This section requires the trial to be delayed more than 180 non-excludable days from the date of arraignment and the excessive delays must be caused by the state.

There are several delays excludable under the act. Specifically, § 545.780.3, states "(2) Any period of delay resulting from the absence or unavailability of the defendant...." The defendant's failure to appear for his scheduled trial is not chargeable to the state in computing the 180-day rule.

■ In order to avail himself of the speedy trial act, the delays must be caused by the state and not by the defendant. *State v. Henderson,* 667 S.W.2d 33, 35 (Mo. App.1984); *State v. Edwards,* 650 S.W.2d 655, 658 (Mo.App.1983).

The defendant cannot so demonstrate. He failed to appear for trial on October 5, 1981, and was in continuous federal custody from at least September 30, 1981, until his release to Clay County in June 1984.

The trial judge scrupulously maintained his docket sheets in clean and concise language as required by then § 545.780.5. A thorough study of these entries reveals that the time lapse was occasioned by defendant's failure to appear. From this record it cannot be claimed the trial court abused its discretion by refusing to sustain defendant's motion to dismiss.

The Supreme Court in *State v. Collins,* 669 S.W.2d 933, 935 (Mo. banc 1984) stated:

The speedy trial act, despite the requirement of detailed findings, has no teeth. Dismissal of an indictment or information is purely a matter for the discretion of the trial judge. One who would challenge this exercise of discretion must meet the very substantial burden of demonstrating an abuse of discretion. Counsel should realize that success on appeal is very unlikely if the trial judge declines to dismiss the case. We are totally unable to say that the delay involved in this case was so great that the denial of the motion to dismiss could be said to constitute an abuse of discretion.

In *State v. Anderson,* 687 S.W.2d 643, 646 (Mo.App.1985) the court noted that *Collins* "undoubtedly abolished any viable claim by a defendant of trial court error for refusing to enforce the provisions of the speedy trial act by dismissal." In *Anderson,* the delay was not attributable to the defendant, but the court, citing *Collins,* ruled the trial court had virtually unlimited discretion to deny the dismissal even though the delay was not caused by the defendant. As we have seen in the instant case, this delay was occasioned by defendant's incarceration in federal prison outside Missouri, during which time defendant sought dismissal of the charges, not a speedy trial.

■ Accepting appellant's computation of delay from his arraignment in circuit court until trial, July 2, 1981 to September 12, 1984, he has not demonstrated the entire delay "was occasioned by the state." Section 545.780.5; *State v. Sweeny,* 701 S.W.2d 420, 427 (Mo. banc 1985).

Finally, the defendant alleges error in the manner which the trial court disposed

**504**

of his allegation regarding the disposition of his claim that he was denied a speedy trial because the state failed to bring him to trial under the Uniform Mandatory Disposition of Detainers Act.[3]

■ The court notes that the Uniform Mandatory Disposition of Detainers Act includes application to inmates incarcerated in a correction institution located within Missouri.

■ The manner by which the defendant seeks to trigger a speedy trial (180-day rule) is fully set forth in *State v. Buckles*, 636 S.W.2d 914, 921 (Mo. banc 1982) and bears repeating:

> The request must: be caused to be delivered to the prosecuting officer and appropriate court where trial is sought; seek a final disposition of the charges; and, be accompanied by a certificate of the official having custody of the prisoner together with all pertinent information concerning his incarceration. The Act clearly provides that the petitioner deliver such notice and request to the official "having custody of him" who in turn is charged with the duty to forward the request, together with the supporting documents required, to the appropriate prosecuting official and court by registered or certified mail, return receipt request.

The defendant failed to comply with these requirements.

Point III is ruled against defendant.

Judgment affirmed.

All concur.

---

3. *See* sections 217.450 through 217.520, RSMo Supp.1984. Section 217.490 sets forth an Agreement on Detainers.