**STATE of Missouri, Respondent,**

v.

**Odell NELSON, Appellant.**

**No. WD 37109.**

Missouri Court of Appeals,
Western District.

Aug. 12, 1986.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Sept. 25, 1986.

Application to Transfer Denied
Nov. 18, 1986.

David J. Fry, Asst. Public Defender, Kansas City, for appellant.

Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and BERREY and GAITAN, JJ.

GAITAN, Judge.

Appellant, Odell Nelson, was convicted by a jury of robbery first degree, § 569.020 RSMo 1978, and armed criminal action, § 571.015 RSMo 1978. He appeals those sentences alleging the trial court erred in the following actions: 1) failing to dismiss the information because the trial was had in violation of the speedy trial provisions of the Missouri Constitution, Art. I, § 18(a) and of the Sixth Amendment of the United States Constitution, and also that it violated his Fifth Amendment due process rights; 2) refusing to allow appellant's counsel to question a state's witness as to whether he had committed a prior burglary; and 3) overruling appellant's objection to the prosecutor's closing argument which appellant maintains commented on his right not to testify. The judgment is reversed and the case is remanded for a new trial.

The events surrounding the robbery are not in dispute therefore a brief summary of the facts will be sufficient.

On September 15, 1983, Anthony Phillip Garner, the victim, joined a dice game with Robert Nelson, Terrence Hampton, William Franklin and several other players whom he did not know. Garner won $20 at the game and then left to go to work at the Swope Ridge Health Center. Franklin went by the health center to warn Garner that "some guys" were planning to rob him after work. Garner called his brother, Dwayne Scott, to come over to the Health Center. When Dwayne arrived, he found Nelson, Hampton and Franklin waiting across the street from the health center. Soon thereafter, Garner left work and ran into Franklin, Nelson, Hampton and his brother, Dwayne.

They asked Garner to take them in his car to get some beer. They also suggested that he buy it since he had won all the money at the dice game that day.

As they were driving around, Terrence Hampton tried to take Garner's car keys from the ignition and a struggle ensued. At this point, a white and black car drove up and appellant, Odell Nelson, got out of the car holding a gun. Garner's brother ran from their car and both Garner and his brother testified that they heard shots. Appellant, Robert Nelson and Hampton then began striking Garner and going through his pockets. Garner testified that he was struck on the head with the pistol. Garner also claimed he heard appellant say "shoot him, shoot him." The assailants

took $182, a car stereo equalizer and a wallet.

Both Garner and Scott attended a police line-up on January 30, 1984 and they both identified appellant as one of the assailants. Appellant offered no evidence. The jury returned verdicts of guilty and this appeal followed.

The appellant challenges the state regarding his right to a speedy trial and therefore certain dates become important. The robbery for which appellant was convicted occurred on September 15, 1983. On January 31, 1984, a complaint was filed and appellant was arrested on this case and another unrelated case involving a rape. On February 7, 1984, preliminary hearings were held in both cases and charges in the Garner robbery were dismissed by the state because the state claimed unavailability of a witness.

The appellant was acquitted of the rape charge on October 31, 1984. On that same date, the state filed a complaint in another unrelated rape case. Appellant's incarceration continued and on December 14, 1984 charges were refiled in the September 15, 1983 robbery of Anthony Garner. Charges on the second unrelated rape case were dismissed on December 20, 1984.

Appellant was arraigned a second time on the September 15, 1983, robbery on December 17, 1984. Trial began on March 28, 1985.

■ Appellant's last point will be considered first as it concerns the state's closing argument and is dispositive of the case. The actual statement appellant takes issue with is: "... [W]e want to ask you, Odell Nelson, we want to ask you what you were doing with these guys." Appellant argues that this statement was an inadmissible comment upon his failure to testify. We agree.

The following is the excerpt of the relevant exchange.

See, this guy is a coward by himself; but when he gets with his brother and Hampton and the rest of them he's a real tough guy. But the law says, "No, Mr. Nelson, when you act together with others, your acts, their acts are the acts of everyone. Does that make sense? In other words, even if he didn't have the gun, if one of them has the gun and they rob people, the act of one is the act of all."

Think of this example, suppose there is a man who has a vicious dog, and he puts that dog in his car and he drives into a strange neighborhood and he lets the dog out to attack people, and the dog attacks. And then he rolls down the street and he puts the car—the dog back in the car and drives away. Now, suppose the police came to that man, would you want to hear that man say, "Hey, don't come talk to me about the dog, go ask the dog." Is that what we want to do, "Go ask Robert Nelson, go ask Terrence Hampton."? *"No; we want to ask you, Odell Nelson, we want to ask you what you were doing with these guys."* [Emphasis added.]

■ A prosecutor is not allowed to comment on a defendant's decision not to testify. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); U.S. Const.Amend. V; Mo. Const. Art. 1 § 19; *State v. Hutchinson*, 458 S.W.2d 553, 554 (Mo. banc 1970); *State v. Hemphill*, 608 S.W.2d 482, 483 (Mo.App. 1980).

If an accused [defendant] shall not avail himself or herself of his right to testify, ... it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place.

§ 546.270 RSMo 1978.

Respondent contends that the prosecutor's comments did not constitute comments on the failure of the appellant to testify. However, the record does not support that contention.

"Critical to determining whether a direct reference to the failure to testify has been made is whether the words 'defendant' or

'accused' and 'testify' or their equivalents have been used." *State v. Hill*, 678 S.W.2d 848, 850 (Mo.App. 1984). Here, the prosecutor stated, "[W]e want to ask you, *Odell Nelson*, we want to *ask* you what you were doing with these guys." [Emphasis added.]

The prosecutor's statement appears to satisfy this test. If this was not a direct reference, it was certainly an indirect reference.

> To be an indirect reference the comment must be the type that, when viewed in context, would cause the jury to infer that the remark referred to the accused's failure to testify.... The ultimate question is whether the remark drew the jury's attention to the lack of testimony by defendant.... We must examine the remark in the particular context in which it is made.

*State v. Hill*, 678 S.W.2d at 850.

The prosecutor's closing argument in the case at bar was an impermissible reference to the defendant's failure to testify. The analogy the prosecutor was attempting to make simply went too far. The relevant sentence comments directly on the defendant's silence. This is true even when that sentence is read within the context of the entire paragraph. This comment goes beyond the respondent's assertion that it "merely directs the jury's attention to the weakness of the defendant's case." It is clear that a jury would have made an impermissible inference concerning the defendant's failure to take the stand and testify.

Respondent relies on *State v. Sechrest*, 485 S.W.2d 96, 98 (Mo. 1972), as analogous to the case at bar. In that case the court addressed the following statement: "Like I said, this is a case of circumstantial evidence. There was no one who could identify John R. Sechrest as the man who entered that home. But yet there is no one who has come forward with a reasonable explanation for how the property got into the defendant's car." The court found that statement to be permissible. However, the facts present here are distinguishable.

Appellant correctly relies on *State v. Williams*, 673 S.W.2d 32 (Mo. banc 1984). In *Williams*, the appellant took issue with the following statement:

> Let me stop right there. Now, ladies and gentlemen, there is no eyewitness as to what happened in that bathroom that the State can produce for you today. There's only two people back there that knows [sic] exactly what happened and can tell you -who knows exactly what happened back there.

*State v. Williams*, 673 S.W.2d at 35.

The Supreme Court stated they had no hesitation in saying that this argument contained an improper reference to the defendant's failure to testify. That statement was an *obvious reference to the fact that only the defendant and the victim could* testify to what happened that day.

■ This area is not one that lends itself to a precise definition of what comments are or are not permissible. Therefore, every case must be analyzed according to its own fact situation. We look to past cases for examples of impermissible comments where the defendant's convictions were reversed for reference to a defendant's failure to testify. In *State v. Reed*, 583 S.W.2d 531, 533 (Mo.App. 1979), the prosecutor stated in his closing argument, "There is not a single witness who took the stand who is on trial. Bryan Reed is on trial." The prosecutor in *State v. Lindsey*, 578 S.W.2d 903 (Mo. banc 1979), said during voir dire, " 'Mr. Lindsey doesn't have to go forward with any evidence if he doesn't wish to. He doesn't have to take the stand if he doesn't want to.' " As this court stated in *State v. Cokes*, 682 S.W.2d 59, 61 (Mo.App. 1984), "These cases point up the hazard of reversal occasioned by state's counsel making *any* reference to a defendant's failure to testify."

"The time has come that any comment by the state upon the failure of a defendant to testify should be condemned under the pain of reversal." *Id.* at 62. This court agrees.

It is obvious that the reference made by the prosecutor in the instant case was attempting to explain accomplice liability to the jury, however his analogy went one step too far. His last statement was improper and created reversible error.

## II

At this time we will also consider appellant's arguments concerning whether he was denied a speedy trial as the issue will arise at the new trial.

Appellant alleges he was denied a speedy trial in violation of his Fifth and Sixth Amendment rights under the United States Constitution and therefore the trial court should have granted his motion to dismiss the information. The reason asserted is that his trial on the Garner robbery was held approximately 13 months after his initial arrest. Further, appellant claims he was denied his due process right to a speedy trial because his trial was held 18 months after the crime was committed and that a second complaint and warrant were not issued for 10 months. He also claims the state intentionally prolonged his incarceration and the delay impaired his ability to defend himself.

Appellant's argument concerning the state's failure to give him a speedy trial merits some analysis.

A review of the record demonstrates that appellant was tried within an actual 104 days of the re-filing of charges in the Garner robbery. That was well within the 180 day limit of § 545.780.2 RSMo (1978), which was in effect at the time the crime was committed and therefore his constitutional rights were not violated. *State v. Mask,* 655 S.W.2d 832 (Mo.App.1983); *See State v. Bullington,* 680 S.W.2d 238 (Mo.App.1984). Even if the time between the first arraignment and dismissal are added into the equation, it still only adds up to 111 days.

■ Appellant was first arrested and charged in this case on January 31, 1984, and the charges were dropped. Those charges were dismissed without prejudice on February 7, 1984. It is a discretionary

right of the prosecutor to cease prosecution of a cause at any time. The charge may be brought again as long as the accused's double jeopardy rights have not attached and the statute of limitations has not run. *State v. Lawson,* 630 S.W.2d 185, 189 (Mo. App.1982). Neither of the above had occurred in this case.

After charges were dismissed on February 7, 1984, appellant was not under arrest, in custody, or subject to any criminal charge concerning the Garner robbery until charges were refiled on December 14, 1985, and trial began on March 28, 1985; 104 days elapsed between these dates. *See United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

■ Factors to be considered in determining whether defendant suffered a denial of his constitutional right to a speedy trial are: 1) length of delay; 2) reason for delay; 3) defendant's assertion of his rights; and 4) prejudice to the defendant by the delay in bringing him to trial. *State v. Evans,* 606 S.W.2d 789, 790 (Mo.App. 1980) citing *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973).

Examination of these four factors in light of the facts in the case at bar is appropriate here.

■ The first factor to be weighed is the length of the delay. Unless the length of delay is "presumptively prejudicial," there is no need to inquire into the other three factors. Whether a given length of time triggers further inquiry depends upon the circumstances of each case. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious ... charge." *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192. *State v. Black,* 587 S.W.2d 865, 872 (Mo.App.1979). In the case at bar, the defendant continually faced charges from the time of initial arrest until trial. He became an "accused" when he was first arrested and charged more than thirteen months before he was tried. *See State v. Granger,* 680 S.W.2d

258 (Mo.App.1984). Although Missouri cases establish no exact formula for determining whether this delay is "presumptively prejudicial", as a general rule our courts hesitate to preclude further inquiry into the *Barker* factors. *See State v. Bolin,* 643 S.W.2d 806, 813–14 (Mo banc 1983). We find that the delay in the circumstances of this case warrants further inquiry. The following delays have been held to be "presumptively prejudicial": *State v. Bolin,* 643 S.W.2d 806 (seven months in a burglary case); *State v. Buckles,* 636 S.W.2d 914 (Mo. banc 1982) (fifteen months in a capital murder case); *Stokes v. State,* 688 S.W.2d 19 (Mo.App.1985) (sixteen months in a capital murder case); *State v. Granger,* 680 S.W.2d 258 (Mo.App.1984) (fifteen months in a robbery case); *State v. Harris,* 673 S.W.2d 490 (Mo.App.1984) (fifteen months in a drug possession case); *State v. Morris,* 668 S.W.2d 159 (Mo.App.1984) (twenty-eight months in a manslaughter case).

■ The second factor to be weighed is the reason for the delay. If the state has deliberately hampered the defense, this should weigh heavily against the state. If the delay is due to the state's negligence or overcrowded courts, this weighs less heavily against the state. If the delay is for a valid reason, such as a witness who is unavailable, it is justified and is not to be weighed against the state. *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192.

The third factor under *Barker* is when and how the defendant asserted his right to a speedy trial. In this context, the right is again different from other constitutional rights in that a delay may or may not work to the defendant's benefit. Thus, the Court set no rigid requirement for when the right must be asserted, but rather held that the circumstances surrounding the assertion or failure thereof comprised one of the factors to be weighed. *Id.* at 526, 92 S.Ct. at 2190. The Court also noted that the defendant in that case had not asserted the right through a motion for an immediate trial, but moved to dismiss the indictment, thus indicating a desire to avoid trial rather than to have a speedy trial. *Id.* at 534–35, 92 S.Ct. at 2194. The appellant's pro se attempts in the case at bar of filing for dismissal were attempts to avoid trial not to get a speedy trial.

■ The final and most important of the *Barker* factors is whether the delay actually prejudiced the defendant. Analysis of this factor encompasses three interests which are protected by the right to a speedy trial: (1) prevention of oppressive pretrial imprisonment; (2) minimization of defendant's anxiety and concern; and (3) limitation of the possible impairment of the defense. *State v. White,* 689 S.W.2d 699, 703 (Mo.App.1985) citing *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193. The most important of these interests is the last. *Id.* "The resulting prejudice to require reversal must be actual prejudice apparent on the record or by reasonable inference-not speculative or possible prejudice." *State v. Buckles,* 636 S.W.2d 914, 920 (Mo. banc 1982) citing *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971).

As to the first two interests, defendant complains of the eighteen month delay and incarceration resulting therefrom. While these claims are no doubt true, we believe they are outweighed by the lack of impairment to his defense. Defendant claims the loss of a witness' memory. This claim is unsupported by the record. Appellant argues that his parents would have been better able to recall the events of the evening. However, the record of the motion to dismiss reflects that they could remember little of that night even a few days later. This claim is speculative and not supported by the record. On balance, we find that defendant was not prejudiced by the delay.

■ In balancing the four factors of the *Barker* analysis, we note that the only available remedy for infringement of the right to a speedy trial is "the unsatisfactorily severe remedy of dismissal of the indictment." *Barker,* 407 U.S. at 522, 92 S.Ct. at 2187. Although the state could and should have acted more quickly than it did, we are persuaded that defendant's con-

stitutional right to a speedy trial was not violated.

"[T]he Speedy Trial Clause has no application after the Government, acting in good faith formally drops charges. Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." *United States v. MacDonald,* 456 U.S. at 7, 102 S.Ct. at 1501.

 Further, the Sixth Amendment speedy trial provision is not triggered by a pre-accusatory delay. Only post-accusatory delay entitles the defendant to protection of the Sixth Amendment. *State v. Holmes,* 643 S.W.2d 282, 284 (Mo.App. 1982).

The delay alleged here is pre-accusatory. Consequently, the defendant is relegated to the protections afforded by the statutes of limitation and by the due process clause of the Fifth Amendment which are substantially more restricted than the Sixth Amendment protection. *State v. Holmes* at 285 citing *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

"The Due Process Clause requires dismissal of defendant's case if he shows at trial that pre-indictment delay caused substantial prejudice to his right to a fair trial *and* that the delay was an intentional device to gain a tactical advantage over the accused." *State v. Robinson,* 696 S.W.2d 826, 830 (Mo.App.1985). There was no such showing beyond that previously stated herein which was found to be without merit.

Not every "delay-caused detriment to a defendant's case should abort a criminal prosecution." *United States v. Marion,* 404 U.S. 307, 324–25, 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971). Due process claims of pre-accusation delay are to be scrutinized closely for actual prejudice and should not be loosely interpreted. *State v. Robinson,* 696 S.W.2d at 831.

In *Robinson* this court found no error or violation of the defendant's constitutional rights in the 25 month delay between the date the crime was committed and the date the defendant was charged.

 Appellant also suggests the delay was intentional on the part of the prosecutor. Prosecutors enjoy wide latitude in the filing of charges. *State ex rel., McKittrick v. Wallach,* 353 Mo. 312, 182 S.W.2d 313, 319 (banc 1944). The prosecutor could have had any number of reasons for refiling when he did. The appellant has offered no persuasive evidence to show the prosecutor was intentionally delaying the proceeding. This point is therefore found to be without merit.

Appellant's final point dealing with cross-examination need not be addressed because of the reversal and new trial order.